[No. 857.]

# DUNCAN S. THOMAS, Appellant, *v.* J. D. SULLIVAN ET AL., Respondents.

SALE OF PERSONAL PROPERTY—CHANGE OF POSSESSION—STATUTE OF FRAUDS. —Upon a review of the facts: *Held*, that the change of possession of the personal property sold by K. on behalf of J. & K. to plaintiff, was not sufficient, as against creditors, to satisfy the statute of frauds.

IDEM—INSTRUCTIONS—INTENT OF PARTIES—CIRCUMSTANCES OF SALE.—*Held*, that the court erred in refusing to give the following instructions to the jury: "In making up your minds on the validity of the sale claimed by plaintiff, you should take into consideration all the circumstances sur-

rounding the same; the situation of the parties; the solvency or insolvancy of Jones & Kimerley; whether Thomas was acquainted with their circumstances, or believed or had reason to believe them in debt; the character of the notes given; that they were payable only to one of the firm; whether the trade was within the legitimate business of the partnership business, and the action of the parties; and if, from all you believe, the sale was not in good faith, and for a valuable consideration, you will find a verdict for defendant."

APPEAL from the District Court of the Sixth Judicial District, Eureka County.

*D. E. Baily,* for Appellant.

I. There is nothing in the evidence in this case to justify the court below in granting a new trial. The verdict should not be disturbed in cases of this character, except it appears that flagrant injustice has been done. It is the undoubted right of the jury to weigh the evidence, and they are the exclusive judges of its effect. The presumptions of law are that the evidence warranted the verdict. (*Doll* v. *Anderson*, 27 Cal. 248; *Folsom* v. *Root*, 1 Id. 374; *Livermore* v. *Stine*, 43 Id. 274; *Scoles* v. *Universal Life Ins. Co.*, 42 Id. 523; *Crossett* v. *Wheelan*, 44 Id. 200; *Johnson* v. *Daunpert*, 3 J. J. Marsh's Rep. 391; *Garland* v. *Milling*, 6 Geo. 310; *Lavel* v. *Cromwell*, S. C. Const. Rep. 593; *Wait* v. *McNeil*, 7 Mass. 261; *Salmons* v. *Webb*, 12 B. Monroe, 365; *Allen* v. *Jarvis*, 20 Conn. 38; *Fowler* v. *Etna Fire Ins. Co.*, 7 Wend. 270; *Jackson, ex. dem. Fowler,* v. *Loomis*, 12 Id. 27; *Largan* v. *Cent. R. R. Co.*, 40 Cal. 273; *Wing Chung* v. *Los Angeles*, 47 Id. 531.)

II. The granting or refusing a motion for a new trial is a matter not of discretion in the court below, but of sound legal judgment. (*Sacramento & Merdith M. Co.* v. *Showers*, 6 Nev. 296; *Holman* v. *Dord*, 12 Barb. 336; *Tonstal* v. *Bishong*, 2 A. K. Marsh, 521; *Giles* v. *State*, 6 Geo. 276; *Bulkley* v. *Waterman*, 13 Conn. 328; *De Fonclear* v. *Shottenkirk*, 3 John. 170; *Douglas* v. *Tousey*, 2 Wend. 352; *Brook* v. *Bicknell*, 4 McLean, 70; *Newell* v. *Wright*, 8 Conn. 319; *Bacon* v. *Parker*, 12 Id. 212; *Bishop* v. *Perkins*, 19 Id. 300; *Kelly* v. *Jackson*, 6 Peters, 622; *Trenor* v. *C. P. R. R. Co.*, 50 Cal. 222; *Iburg* v. *Suanet*, 47 Id. 265; *Price* v. *Sturges,*

44 Id. 591; *Kile* v. *Tubbs*, 23 Id. 431; *Lyle* v. *Rolins et al.*, 25 Id. 437; *Lawrence* v. *Burnham*, 4 Nev. 365; *Scott* v. *Haines*, 4 Id. 427.)

III. The motion for a new trial in this case should have been denied.

*John T. Baker*, for Respondent.

A new trial will not be granted by an appellate court when denied by the *nisi prius* judge, on the ground of the insufficiency of the evidence to justify the verdict, unless the evidence so clearly preponderates in favor of the party asking a new trial as to lead to the conclusion irresistibly that the verdict was wrong. (Gray. & Wat. on New Trials, vol. 3, 1207–8; *Phillpotts* v. *Blasdell*, 8 Nev. 61; *State* v. *Joseph Stanley*, 4 Id. 71; *The State* v. *Yellow Jacket S. M. Co.*, 5 Id. 415; 20 Cal. 48; 24 Id. 419; *Eagle Bank* v. *Smith*, 5 Conn. 71; *Wilkinson* v. *Parrott*, 32 Cal. 102; *Wilkcoxson* v. *Burton*, 27 Id. 232; *Speck* v. *Hoyt*, 3 Id. 413; *Smith* v. *Bellet*, 15 Id. 23; *Hanson* v. *Barnhisel*, 11 Id. 340; *Kimball* v. *Gearhart*, 12 Id. 27; *Scamell* v. *Strahle*, 9 Id. 177; *Weddle* v. *Stark*, 10 Id. 401; *Preston* v. *Keys*, 23 Id. 193; *Treadway* v. *Wilder*, 9 Nev. 70.)

*Hillhouse & Davenport*, also for Respondent.

By the Court, LEONARD, J.:

In July, 1874, and prior thereto, William Jones and W. L. Kimerley were copartners in coal and wood business in Eureka county. They had formerly owned two wood ranches, but on the twenty-eighth day of July, 1874, they had but one, which was known as the " Gunn ranch." They owned teams, which were required in carrying on their business. At the time of the sale of the property to plaintiff, hereinafter mentioned, Jones & Kimerley, as copartners, were indebted to different parties, among whom were defendants, Oberfelder and Harrison, whose claim was two thousand two hundred and thirty-eight dollars and ninety-four cents, for goods sold and delivered to Jones & Kimerley. On the third of August, 1874, Oberfelder and Har-

rison brought suit against Jones & Kimerley to recover the amount of their claim, and attached the property described in the complaint herein. Defendant Sullivan, as sheriff of Eureka county, served the writ by taking the property into his possession. Oberfelder and Harrison obtained judgment for the full amount of their claim, and this action was brought to recover of defendants the value of the property attached and taken by them, stated to be one thousand six hundred dollars. Defendants, in their answer, admitted taking the property described, but justified the same by alleging that it was, at the time of the attachment, the property of Jones & Kimerley; that plaintiff's claim thereto was fraudulent; that if any transfer of said property was ever made, such transfer was for the purpose of hindering, delaying, and defrauding the creditors of Jones & Kimerley, and particularly Oberfelder and Harrison, defendants herein, and that such transfer was without consideration and void. A jury trial was had, and plaintiff obtained judgment against defendants for the alleged value of the property attached, one thousand six hundred dollars. Defendants moved for a new trial, on the grounds that the jury gave excessive damages; that the verdict was against law; that errors in law occurred at the trial, and that the evidence did not justify the verdict. The motion was granted by the court upon the last ground stated, and this appeal is taken from the order granting a new trial.

The record does not disclose wherein the evidence was regarded as insufficient by the court, nor has counsel for respondent, in his brief, directed our attention to any particular wherein it was insufficient. The statement is incomplete, and the result is that the most important questions touching the merits of the case cannot be decided.

Counsel for appellant urges us to disregard the statement on motion for a new trial, so far as it relates to the assignment that the evidence does not justify the verdict, on the ground that there are no sufficient specifications of particulars wherein the evidence is alleged to be insufficient. As to some of them, we think the criticism of counsel is just; but the last is full and explicit. It is "that no change of possession of property on the ranch was shown."

At the trial, plaintiff claimed, and introduced evidence tending to prove, that on the twenty-eighth day of July, 1874, Kimerley, on behalf of Jones & Kimerley, sold and delivered to him the personal property described in the complaint, and also the said " Gunn ranch;" that a portion of said personal property was at the time upon the ranch, and consisted of wood, coal, and coal sacks; that the consideration of the sale was two promissory notes signed by him, and made payable on demand to Kimerley alone; plaintiff and Jones testified to the effect that Kimerley was authorized by Jones to sell the property; also, that subsequent to the sale and before the attachment, Jones was notified of the acts of Kimerley; but upon the questions of previous authority and subsequent ratification, defendants proved the testimony of Jones, given under oath before Judge Mc-Kenney, subsequent to the attachment, which tended to show that the sale by Kimerley was unauthorized by Jones, and that the latter did not ratify the acts of the former before the attachment.

Plaintiff testified that Kimerley delivered to him a bill of sale of the personal property on the ranch, and of the ranch itself, but the record contains no transcript of the same.

Upon the question of delivery of the property on the ranch, plaintiff testified that on the twenty-eighth day of July, 1874, Kimerley delivered to him the ranch and the wood, coal and coal sacks thereon; that he stopped on the ranch two or three days; that he asked Gunn, who had been burning coal for Jones and Kimerley for seventeen and one half cents a bushel, to continue burning for him upon the same terms, and that Gunn agreed to burn for him as he had been doing for Jones and Kimerley; that he then went to Sulphur, where he had left the team; stayed there all night; went to the ranch, loaded with coal and went to Eureka, where the sheriff attached the wagon and coal therein, on the third day of August; that the sheriff attached the cattle, seven head, on the fifth day of August; the balance of the coal, a portion of the coal sacks and all the wood were attached on the ranch. Plaintiff testified

that he was to pay the notes by hauling coal, and was to have time to do so. It does not appear that he gave any security for their payment. He had due him $600 ; owned horse, saddle and bridle, and two coal ranches, the value of which is not stated. He did not assume any debts of Jones & Kimerley; did not know whether Jones & Kimerley owed Oberfelder & Harrison anything or not; knew that the latter had furnished the former with goods, but was not certain that there was any indebtedness by reason thereof ; made, no inquiries as to what Jones & Kimerley owed; thought it was none of his business. Jones testified that the property Kimerley sold to plaintiff was all the property that the firm had left ; that the reason why the sale was made was because Kimerley said Oberfelder & Harrison would close down on them ; that they wanted their men to get their pay; that he and Kimerley had a quarrel and concluded to close out. He also stated that neither he nor Kimerley was on the ranch after the sale ; but it does not appear that either of the partners was on the ranch at any time before the sale, or that any one remained there except Gunn, who still remained in the employ of plaintiff as he had previously done for Jones & Kimerley.

Aside from a conveyance and delivery of the ranch by Kimerley, the only evidence before us of a continued change of possession of the personal property attached thereon, is this: plaintiff stopped on the ranch two or three days. But so did Gunn, as he had formerly done ; and there is no proof that plaintiff exercised any acts of ownership over the ranch or personal property thereon during the two or three days he was there; and during the whole time before the attachment, the only act performed by him that indicated a claim of ownership or possession, so far as the record shows, was loading up a certain amount of coal after getting the team from Sulphur, and taking it to Eureka. We do not think this proof was sufficient as against creditors of Jones & Kimerley, to satisfy the statute of frauds. But aside from the fact that a bill of sale, signed by Kimerley alone, purporting to convey the ranch and the personal property thereon, was admitted in evidence against defend-

ants' objection, the testimony above stated is all the proof given to establish a delivery and continued change of possession of such property. The bill of sale is not before us, and consequently we cannot know that it was such an instrument in writing as the statute requires as a conveyance of an interest in lands. We do not know whether the whole title of Jones and Kimerley, or Kimerley's alone, or of neither, was conveyed thereby.

Without previous authority or subsequent ratification before the attachment, Kimerley could not sell or convey Jones' half interest in the ranch, although it be true that the bill of sale was sufficient in form and substance on its face to convey the whole title; and upon the question of such authority and ratification, we have seen that there was great conflict of testimony. But whatever the real facts may be as to the conveyance of the ranch, as before intimated, the case, as presented on this appeal, is the same as though there had been no attempted sale of the real property. However, the order granting a new trial must be sustained for another reason. At the trial defendants requested the court to instruct the jury as follows:

"In making up your minds on the validity of the sale claimed by plaintiff, you should take into consideration all the circumstances surrounding the same, the situation of the parties: the solvency or insolvency of Jones and Kimerley; whether Thomas was acquainted with their circumstances, or believed or had reason to believe them in debt; the character of the notes given; that they were payable only to one of a firm; whether the trade was within the legitimate business of the partnership business, and the action of the parties; and if from all, you believe the sale was not in good faith, and for a valuable consideration, you will find a verdict for defendant." The refusal of the court to give this instruction is assigned as error. The intent of parties to a sale can never be ascertained except by a consideration of all the facts attending it. If their intent was fraudulent the sale is void, although a full price was paid by the vendee. (Bump on Fraud. Conveyances, 231.) No witness can look into the minds of the parties, and thus be able to swear positively that they intended to defraud the

creditors of the vendor; and hence, fraud can generally be shown only by facts and circumstances which tend directly or indirectly to establish it. No one act or declaration may establish it, but the whole, when considered in the light of surrounding circumstances, may show it to the satisfaction of court and jury. "These acts and declarations, and all concomitant circumstances, must be established, and then the motive may be deduced from them in accordance with those principles which are shown by experience and observation to rule human conduct. The proof in each case will consequently depend upon its own circumstances. It usually consists of many items of evidence, which, standing detached and alone, would be immaterial, but which, in connection with others, tend to illustrate and shed light upon the character of the transaction, and show the position in which the parties stand, and their motives, conduct and relations to each other." (Bump, 560.) There was no fact or circumstance mentioned in that instruction which should not have been "taken into consideration" by the jury. There was no fact or circumstance legitimately developed at the trial that should not have been taken into consideration by them in deciding upon the question of the intent of both parties to the sale. This instruction would have directed the jury, among other things, to take into consideration the fact that the notes given by plaintiff were payable to Kimerley alone. This, at first blush, may seem to take from the jury the consideration of the question whether the notes were or were not so payable. But that fact was conceded by plaintiff. In fact, he so testified. So, upon this point, there was no question of fact to go to the jury.

The instruction offered was correct and important, and the refusal to give it was error that may have been prejudicial to defendants. For this error alone, the court did not err in granting defendants' motion for a new trial; for although the order was made on the ground that the evidence was insufficient to justify the verdict, it is well settled that "a wrong reason will not vitiate or affect a correct judgment or result." (*Scott* v. *Haines*, 4 Nev. 428.)

The order of the district court granting a new trial is affirmed.