[No. 1003.]

## JOSEPH TOGNINI ET AL., APPELLANTS, *v.* MATTHEW KYLE, RESPONDENT.

CLAIM AND DELIVERY OF PERSONAL PROPERTY—FRAUD MAY BE INFERRED.— Where fraud is charged, express proof is not required, but it may be inferred from strong presumptive circumstances.

IDEM—SUFFICIENCY OF EVIDENCE TO ESTABLISH FRAUD.—The evidence reviewed and held sufficient to show that the sale of the personal property was made with intent to defraud creditors, and that the vendees participated in the fraud of the vendor.

CONFLICT OF EVIDENCE.—Rule as to weight and conflict of evidence enforced.

INSTRUCTION—FALSE ENTRY IN BOOKS—TRANSACTION FRAUDULENT.—The court instructed the jury as follows: "If the jury believe from the evidence that the transaction between plaintiffs and Nicholas Luchessi, in relation to the order for the payment of Biagio Luchessi was fraudulent, and there was a false entry upon plaintiffs' books to show payment of this order, and this transaction was intended to hinder, delay, or defraud Hansen, then you must find for the defendant:" *Held,* that, when taken and considered with other instructions, it could not have misled the jury.

APPEAL from the District Court of the Sixth Judicial District, Eureka County.

The facts are stated in the opinion.

*Bishop & Sabin,* for Appellants:

I. There was no evidence to sustain the verdict. It was evidently rendered under a misapprehension of the law, and of the evidence, or as the result of prejudice. In either event a new trial should be ordered. (*Quint* v. *Ophir*, 4

Nev. 304; Hilliard on New Trials, 461, sec. 27; *Tompkins* v. *Corry*, 14 Ga. 118; *Williams* v. *Brasfield*, 9 Yerg. 270; *Levingsworth* v. *Fox*, 2 Bay, 520; *Potter* v. *Carney*, 8 Cal. 574; Hilliard on New Trials, 276, sec. 34.)

II. It was error in the court in giving defendants instructions two and three. It was error to direct the attention of the jury to a point on which there was no evidence, and especially so, to assume that point as proven. (Hilliard on New Trials, 293, 294, note (a) 294, and cases cited; *Snyder* v. *Wilt*, 15 Penn. 59.)

The instructions are based on the assumption that there were false entries in appellants' books of account. There is no word of testimony to sustain this assumption. The court, by instruction No. 3, asked by defendant, submits to the jury the question whether or not said accounts and books are not fraudulent, and fraudulently kept. For these reasons alone the judgment should be reversed and a new trial granted. (*Eckert* v. *Flowry*, 43 Penn. 46; *Harris* v. *Wilson*, 1 Wend. 511; Hilliard on New Trials, 312, sec. 69.)

III. The court erred in using the term fraud, in the instructions, without instructing the jury in what legal fraud consisted. There being no fraud in law, as distinguished from fraud in fact, the giving of instructions objected to was erroneous. (Hilliard on New Trials, 349, secs. 126, 127; *Jackson* v. *Timmerman*, 7 Wend. 436; *Fowler* v. *Swift*, 3 Ind. 188; *Williams* v. *Bently*, 29 Pa. 272; *Flack* v. *Neill*, 22 Tex. 253.)

IV. There being no evidence from which fraud could be fairly inferred, it was error for the court to submit the question of fraud to the jury. (Hilliard on New Trials, 353, note a; *Herdic* v. *Bilger*, 47 Pa. 60.)

*Laspeyre & Beatty*, for Respondent:

I. Sometimes a fact in issue is not directly proved, but is inferred or presumed from other facts; often a single fact will determine the verdict by inference, and where the inference is reasonable, the verdict will not be disturbed. (3 Gra. & Wat. N. T. 1275, 1278; *Price* v. *Evans*, 4 B. Mon. 386; *Ward* v. *Crutcher*, 2 Bush, 87; *Swaggerty* v. *Stokely*, 1

Swan, 38; *McDaniel* v. *Bacca,* 2 Cal. 326; 2 Cow. 404; 1 Story Eq. Jur., sec. 190; 1 Greenl. on Ev., sec. 53, note 1, 75.)

II. There was abundant evidence showing fraud in the entire transaction of the pretended assignment, and fraud was clearly established before the jury. (Testimony reviewed at length.)

III. The third instruction did not assume a fact. The language of this instruction in regard to the statute of frauds follows the statute substantially.

IV. This court will not disturb the instructions of the district court to the jury, on the ground that there was no evidence upon which to base them, when there was some evidence, although it may have been slight. (*Allison* v. *Hagan,* 12 Nev. 41; *Perlberg* v. *Gorham,* 10 Cal. 122; *People* v. *Cleveland,* 49 Id. 578; *Robinson* v. *W. P. R. R. Co.,* 48 Id. 420.)

V. All instructions must be construed together. (10 Sm. & M., Miss. 25; 3 Gra. & Wat. N. T. 862–863; *Depeyster* v. *Columbian Ins. Co.,* 2 Caines, 85; *Edmondson* v. *Machell,* 2 Term R. 5.)

VI. The court will not disturb the verdict if the evidence is conflicting. (*Henry Rice* v. *James Cunningham,* 29 Cal. 492; 3 Gra. & Wat. N. T. 1213, 1214, 1218, 1240, 1286, note D; *Preston* v. *Keys,* 23 Cal. 193; *Kimball* v. *Gearhart,* 12 Id. 27; *Kyle* v. *Tubbs,* 32 Id. 332; 1 Gra. Wat. N. T. 385; *Douglas* v. *Tousey,* 2 Wend. 352; *Hammond* v. *Wadhams,* 5 Mass. 353; *Baker* v. *Briggs,* 8 Pick. 122; *McAfee* v. *Ryan,* 11 Mo. 364; *Lee* v. *Banks,* 4 Litt. (Ky.) 12; *Moore* v. *Foster,* 10 B. Mon. 255; *Dodge* v. *Britain,* 1 Meigs, 84; *Kincaid* v. *Turner,* 2 Gilm. 618; *Bacon* v. *Parker,* 12 Conn. 212; *Alsop* v. *Com. Ins. Co.,* 1 Sumner 451; *Bishop* v. *Perkins,* 19 Conn. 300; *Duell* v. *Bear River & A. M. Co.,* 5 Cal. 85; *Speck* v. *Hoyt,* 3 Id. 419; *Smith* v. *Billet,* 15 Id. 26.)

VII. The statute does not contemplate conclusive evidence of fraud. (*White* v. *Leszynsky,* 14 Cal. 165.)

By the Court, Leonard, J.:

On the first of March, 1879, and up to and including the

date of the commencement of this action, plaintiffs were partners and doing business as merchants in Eureka county, under the firm name and style of Tognini & Co. and Vanina.

On the day above stated they purchased of Nicholas Luchessi, all the property of the latter, consisting of ten thousand bushels of charcoal, more or less, in the pit, and certain teams, tools, etc., the consideration agreed upon being two thousand dollars for the charcoal, and three hundred and fifty dollars for the balance of the property. Immediately after the purchase, plaintiffs took possession of the property, and employed a man to haul the coal to market. After some four thousand bushels had been hauled away, as sheriff of Eureka county, and under and by virtue of a writ of attachment regularly issued, in a suit brought by P. N. Hansen against Nicholas Luchessi, defendant attached the balance of the coal in the pit, six thousand and twenty-nine bushels, as the property of Luchessi.

Plaintiffs brought this action to recover possession of the coal so attached, or its value, alleged to be sixteen cents a bushel.

Defendant answered, denied all the material allegations contained in the complaint, and alleged that, at the time of his attachment, Luchessi was the sole owner of the coal attached, and the only person legally entitled to its possession; that plaintiffs' possession was null and void for the reasons following, to wit: "That the transfer and assignment thereof to them from Nicholas Luchessi, if any there was, was made, if at all, for the purpose of hindering, delaying, and defrauding the creditors of said Luchessi, and more particularly the said P. N. Hansen, and that for that purpose, and none other, the plaintiffs took possession thereof, if at all." Defendant recovered judgment, upon the jury's verdict, for the possession of the coal, or its value, nine hundred and sixty-four dollars and sixty-five cents.

Plaintiffs appeal from the judgment and from the court's order denying a new trial.

Counsel for appellants contend: First, that there is no evidence to sustain the verdict and judgment; and second,

that the court erred in giving instructions two and three at the request of respondent. These assignments will be considered in their order. There was only one material fact in issue between the parties; which was, whether or not the sale was made with lawful intent, and was, therefore, valid; or with intent to hinder, delay, or defraud the creditors of Nicholas Luchessi of their lawful suits, damages, forfeitures, debts, or demands, and was, therefore, void. All other questions were dependent upon that.

It was the jury's peculiar province, under proper instructions, to decide that issue by a fair consideration of all the facts and circumstances developed at the trial. (*Thomas* v. *Sullivan*, 13 Nev. 249; Starkie on Evidence (9th ed.), 698; *Blackman* v. *Wheaton*, 13 Minn. 326; *Weisiger* v. *Chisholm*, 28 Tex. 780; 1 Graham & Waterman on New Trials, 525; *Ward* v. *Crutcher*, 2 Bush (Ky.), 87.)

And although the law never presumes fraud, still, where it is charged, "express proof is not required, but it may be inferred from strong presumptive circumstances." (*McDaniel* v. *Bacca*, 2 Cal. 339; *Ward* v. *Crutcher, supra;* 3 Graham & Waterman on New Trials, 1275; Hilliard on New Trials, 473; Bump on Fraud. Conveyances, 541; Id. 560, *et seq.;* 1 Story's Eq. Jur., sec. 190.)

There is no kind of action, wherein it can be held with greater reason, that the fact in issue may be inferred from other facts proved, than in cases charging fraud. As a rule, the motives of men can be best ascertained by a proper consideration of their acts and declarations, and oftentimes they can be revealed by no other means.

An intent to defraud is not published to the world; but, on the contrary, the usual course is to give the contract an appearance of an honest transaction, and, as far as possible, to have the conduct of the interested parties correspond therewith. In *Thomas* v. *Sullivan, supra,* we said: "No witness can look into the minds of the parties and thus be able to swear, positively, that they intended to defraud the creditors of the vendor; and hence fraud can generally be shown only by facts and circumstances which tend directly or indirectly to establish it."

Any other rule would make the statute of frauds practically a dead letter; and there is little danger that honest men will suffer by a stubborn adherence thereto.

Under this rule, if it is true, as claimed by counsel for appellants, that there was no evidence tending to prove a fraudulent intent in this case, or no facts shown from which the jury had a right to infer such intent, then a new trial should be granted; on the contrary, if there was such evidence, or such facts were shown, then the judgment must stand, unless the instructions complained of misstate the law.

After a careful examination and consideration of the testimony, we think many facts were proven, from which, taken together, the jury were justified in concluding that the sale of the coal in question was made by Nicholas Luchessi with an intent to defraud his creditors, and that appellants participated in the fraud of the vendor.  A few of those facts will be stated.

1. Appellants agreed to pay twenty cents a bushel for the coal at the pits, when, at that place, it was worth but sixteen cents.  Luchessi was anxious to sell, and was the first person who suggested the sale; and yet, without reason, if the transaction was an honest one, appellants agreed to pay some four hundred dollars more than the property was worth.

2. One of the appellants, Vanina, testified that appellants "had the control of all of Nicholas Luchessi's coal, prior to the time of purchase; that they had already delivered considerable coal for Luchessi, and had the right to keep sufficient out of this coal to pay themselves when it was delivered, and the men working on the ranch looked to appellants for their pay."  Zanolia, also one of appellants, the one who made the contract, testified that "all the men working for Luchessi had agreed to wait for their pay until his coal was delivered; that the coal would have been delivered in appellants' name without any sale to them, and that they would have paid the workmen just the same if the coal had not been attached by some one."  He testified also that when Luchessi sold him the coal, "he did not mention that

he owed Hansen; he did not say anything about owing any one but the men that he gave us the orders to pay;" that "Luchessi came down and said, 'the boys want security for their money,' and he wanted to sell the coal to us to pay his workmen, and to settle the bill he owed us for Biagio Luchessi; and I agreed to take the coal, and did take it." Pinney, appellants'. book-keeper, testified that he "heard all the trade;" that Luchessi said, "'All my men want money,' and wanted Vanina and Zanolia to buy his charcoal that was on the ranch."

It will be seen from the foregoing, that the reason given for the sale was that Luchessi wished to pay appellants and his men, who were demanding their pay. If appellants had control of the coal; if without sale to them it would have been delivered in their name; if they had the right to keep out sufficient to pay them when the coal was delivered, it is difficult to perceive why Luchessi should wish to sell it in order to pay them, or why they should wish to purchase it, especially in view of the fact that they did not, according to their testimony, know that Luchessi was indebted to any one but his men, and they had agreed to wait for their pay until the coal was delivered. If the men so agreed, it is not easy to see why they should have demanded their pay when they did, or why Luchessi should have been so anxious to sell all his property in order to pay them before their wages were due; and if it was an honest transaction, it is especially difficult to understand why appellants were willing to pay four hundred dollars more than the value of the property, when after the purchase their situation was no more favorable than before.

3. Zanolia and Pinney both testified that, after the former had accepted the several orders for the payment of Luchessi's workmen, Luchessi took the orders to the ranch for the men—a very proper and natural proceeding. But Luchessi swore that, "after the orders were accepted by Zanolia they were kept by Tognini & Co. and Vanina (appellants), so they could pay them when the men wanted their money;" that he "did not show the orders to the men or take the orders to the ranch, or tell the men what he had

done;" that he "told Zanolia to pay the men, and the men were satisfied."

If the object of the sale was as claimed by appellants, Luchessi would have given the accepted orders to his workmen, or would have received instructions from them as to what disposition should be made of them. At least, such would have been the natural course among men so situated. It was a strange proceeding to leave the orders of men. clamoring for their pay with the acceptors; and it is remarkable that they were satisfied, although Luchessi, who sold his entire property to pay them and appellants, did not show them the accepted orders, or tell them what he had done; and there was no proof that any one else informed them that appellants had become responsible to them.

4. One of the orders accepted was in favor of Biagio Luchessi, brother of Nicholas, for six hundred and thirty-two dollars.

Pinney swore that the whole amount was due to appellants from Biagio, and that Nicholas "went responsible for the bill" before the sale, but not in writing. He was subpœnaed to bring into court all of appellants' books relating to these transactions, but he did not bring book three, which contained items aggregating four hundred and seventy-three dollars and sixteen cents, out of Biagio's total account of six hundred and thirty-two dollars, because he "did not think it would be wanted."

Book three was the only book that showed the items of Biagio's indebtedness to appellants, to the extent of four hundred and seventy-three dollars and sixteen cents. Pinney swore positively, however, that the balance due *to appellants* from Biagio was six hundred and thirty-two dollars, while Nicholas Luchessi testified that he owed Biagio six hundred and thirty-two dollars, "for labor on the ranch and for sledding wood, and for *some goods that he had bought at the store.*" Pinney swore that Biagio's account for 1878 was but one hundred and fifty-eight dollars and eighty-four cents, and that the balance of indebtedness (four hundred and seventy-three dollars and sixteen cents) was contracted between December 31, 1878, and some time in February,

1879, although he had no one working for him in 1879.
Witness afterwards stated that the item of indebtedness for
1879 (four hundred and seventy-three dollars and sixteen
cents) included a charge for board, "while Biagio was laid
up with a sore hand in the summer of 1878;" but the
journal for 1878, then in court, failed to show any charge
for board in 1878, although it purported to contain all
charges against him for that year.   Moreover, Hansen tes-
tified that Zanolia told him in January, 1879, that appel-
lants did not trust Biagio, and there was no proof of the
amount of the charge claimed for board in 1878.   It might
have been one dollar or more.   So the facts upon which the
jury could act were, that between the first of January and
some days before the first of March, appellants trusted
Biagio for four hundred and seventy-three dollars and
sixteen cents, at a time when (from Hansen's testimony)
they were not trusting him; and that he purchased that
amount of goods at a time when he was employing no men.
Zanolia testified that the journal and ledger in court con-
tained all the business transactions between appellants and
Nicholas Luchessi and Biagio Luchessi; and Vanina said:
"We bought no other property from Luchessi but the
charcoal."   He stated, also, that he was present when the
sale was made.

We might pursue this examination further with the same
result, but deem it unnecessary to do so.   From all the
testimony, we can not say that the conclusion of the jury
was arrived at without sufficient reason, or that, in refusing
a new trial upon the ground of insufficiency of evidence to
justify the verdict, the court abused its legitimate discre-
tion.

On behalf of appellants the jury were instructed as fol-
lows: "A man who owes various parties, and has not suffi-
cient property to pay all of his creditors, may elect what
one of his creditors he will pay, and he may sell his prop-
erty to pay any of his creditors in full, to the exclusion of
any or all of his other creditors.   For a man may pay one,
and not pay another, or may equally divide his property
among all his creditors.   And the only question for cred-

itors is, did the party make a sale of his property in good faith and for a valuable consideration, and did plaintiffs take actual possession of the same immediately after sale?"

"If the jury find, from the evidence, that Tognini & Co. and Vanina, the plaintiffs, purchased the coal in question from N. Luchessi, on or about the first day of March, 1879, for a valuable consideration, and that said purchase was made in the usual course of business, then the jury are instructed that said plaintiffs had the right to make the purchase, and Luchessi had the right to make the sale, no difference to whom the said Luchessi may have been indebted; that if plaintiffs had purchased the coal, and agreed to pay for the same before the said coal was taken under attachment issued in the case of *Hansen* v. *Luchessi,* the jury should find a verdict for the plaintiffs."

Instruction number two, given for respondent, is without fault, and will not be considered.

Number three is as follows: "If the jury believe, from the evidence, that the transaction between plaintiffs and Nicholas Luchessi, in relation to the order for the payment of Biagio Luchessi, was fraudulent, and there was a false entry upon plaintiffs' books to show payment of this order, and this transaction was intended to hinder, delay, or defraud Hansen, then you must find for the defendant."

Against this instruction it is urged that, "it is a commentary on the evidence introduced; that it assumes as true a state of facts not proven, and which did not exist; that it called the attention of the jury to matters not alleged or proved, assuming that evidence had been offered and admitted in reference thereto."

It may be conceded that it is error for a court to direct the jury's attention to a fact in issue upon which there is no direct evidence, or no evidence from which they ought to infer the existence of such fact.

It is plain, however, that under the rule stated, it was proper for the court to instruct the jury upon the main issue in the case; that is to say, upon the intent of the parties, for, as we have seen, facts were shown from which the jury

might infer that the transaction was fraudulent as to the creditors of Luchessi.

And we think, for the same reason, the court did not err in instructing the jury as it did in relation to the entries in appellants' books. There were suspicious circumstances in connection with the account of Biagio Luchessi; and although it does not appear that the books were admitted in evidence, still there was much testimony given, without objection, touching Biagio's account—among other things, its amount for the year 1878, and from January 1, 1879, until he settled with appellants in February following. The book-keeper, subpœnaed for that purpose, brought the journal and ledger into court, and referred to Biagio's account therein, in giving his testimony. Luchessi's account, including the sale of coal and other property, as found on page 624 of the journal, is in the transcript.

The book-keeper said: "The account of Biagio Luchessi is all carried out on the ledger, and the true balance due from him to the plaintiffs, on March 1, 1879 (the date of the sale), was six hundred and thirty-two dollars. The journal does not show all of Biagio's account, because the balance due when this journal was started was taken to the ledger from book No. 3, a small book on which his account was kept with other accounts." He then gave his reason for not bringing book No. 3 into court, as before stated. If it was agreed between the parties, for the purpose of defrauding Hansen, a *bona fide* creditor of Luchessi, that Biagio's account should be fraudulently increased for the sake of having it cover, in whole or part, the amount agreed to be paid for the property, and if in carrying out the intent of the parties, false entries were made upon plaintiffs' books, then the sale was void, and that, in our opinion, is a fair and reasonable construction of the instruction in question.

We think the instructions, taken together, fairly express the law of the case, and that the jury could not have been misled.

It is said, finally, that the court erred in using the word "fraud" in the instructions without also imparting to the jury its proper definition. In reply, we refer to *Allison* v. *Hagan*, 12 Nev. 62.

Judgment and order appealed from affirmed.