## WILLIAM McDANIEL v. MANUEL BACA.

When one who had acted as interpreter and attorney, in relation to the execution of a deed by the grantor and defendant in the action, on being called by the plaintiff as a witness, testified that he had read the deed to the grantor, and what passed at the time of the execution; and who subsequently received a conveyance of a part of the land from the plaintiff: It was held that the defendant might prove that this witness had made to other persons a different statement of the facts in relation to the transaction, from that which he had given under oath; and that it was error in the Court below to reject such evidence, when offered by the defendant.

It was error for the Court to instruct the jury, "that when a person injuriously slanders the title of another, malice is presumed." It was also error to instruct them that fraud could not be presumed, but may be established by circumstances, but not of a light character; the circumstances must be of a most conclusive nature.

When fraud is charged, express proof is not required; it may be inferred from strong presumptive circumstances.

The caution published by Baca, the alleged slander, has no mark of malice accompanying it. It was just such a notice as every freeman and freeholder would be justified in making, if the circumstances raised a strong presumption that the fraud had been attempted upon him to get possession of his estate.

It was error in the Court below to refuse to instruct the jury, that if they believed the receipt specified in the deed, for $3000, was obtained by fraud, they were authorized to find for the defendant. No case in the history of jurisprudence, will sustain that ruling.

The Court will set aside a verdict where the damages are unjustifiable.

THIS was an appeal from the Seventh Judicial District.

The complaint of the plaintiff set forth, that on the 10th day of May, A. D. 1851, he was the owner in fee simple, by deed from the defendant to the plaintiff, bearing date the 21st day of August, A. D. 1850, of part of a certain tract of land therein

mentioned, and the said defendant, wickedly intending to injure the plaintiff, did afterwards, and while the plaintiff was the owner of part of the said tract of land, on the 20th day of May, A. D. 1851, maliciously compose and publish, of and concerning the plaintiff, and also of and concerning his said title to said tract of land, a certain false, scandalous, and defamatory libel, in the words and figures following, to wit:

"Caution.—I hereby notify all persons, not to purchase any lands from William McDaniel, which he claims to have purchased from me, under a title which he obtained under false pretences, and I shall institute suit against him to annul the title so fraudulently obtained by him.

(Signed)      MANUEL BACA."

By means of which, the plaintiff has been brought into public scandal and disgrace, and greatly injured in his good name; and otherwise injured in his title to said tract of land, in the estimation of divers persons; that plaintiff could have sold his said land to James M. Estelle and William Muldron, and divers other persons to the plaintiff unknown, for the sum of $50,000, but for the publication of said false and defamatory libel; that since the publication thereof, the plaintiff has been wholly unable to sell and dispose of said land, or any part thereof, to the said James M. Estelle, William Muldron, or any other person. And that by reason of the said false and defamatory libel, the plaintiff has sustained damage to the amount of $50,000, and demands judgment against the defendant for that amount.

The defendant for answer, denied generally and specifically all the allegations in the said complaint contained; and for further answer says that plaintiff obtained the said deed of August 21, A. D. 1851, by covin, deceit and fraud, and without valuable and adequate consideration; that plaintiff had the said deed prepared and read, and had the same read to defendant as a deed for one square mile of land, and not as said deed in fact was for nine square miles of land; by means of which covin, deceit and fraud defendant signed said deed; that defendant did not understand the English language, and could not read the English or any other language, which the plaintiff well knew; and avers that

the said paper dated August 21, A. D. 1851, is not in law, and in fact the deed of defendant, nor that plaintiff has any title to the land therein described; and the defendant demurs to the complaint of plaintiff, for that it does not state facts sufficient to constitute a cause of action; and for further answer, the defendant alleged that the pretended deed set up by the plaintiff, is void, 1st, because the consideration is vague and indefinite, and that it never was agreed to between the parties what quantity of land should be contained in the lots mentioned in said pretended deed, or the number of lots to be made in said town; and that the said deed was and is incomplete and unfinished, because said matter was never settled; and further alleges that the pretended deed was and is null and void, because it contained stipulations binding on said plaintiff as the material consideration moving defendant, and by which plaintiff was to do and perform certain acts; and that before it became binding on defendant, said plaintiff ought to have joined in the execution thereof, which he did not do.

On the trial of the issue, the following evidence was adduced on the part of the plaintiff.

A deed bearing date the 21st August, 1850, purporting to be executed by the defendant to the plaintiff, embracing a square English league of land at Bacaville in Solano county, in its description, was offered in evidence without proof of its execution, except by the certificate of a Notary Public, who took the acknowledgment of the execution thereof, and the certificate of the clerk; to the reading of which in evidence the defendant's counsel objected, because the execution thereof was not properly proved.

The Court overruled the objection, and the deed was read; to which defendant's counsel excepted. By the deed thus admitted, the defendant conveys to the plaintiff "for the consideration of $3000, and the additional consideration therein set forth," a tract of land containing nine square miles, situate in the county of Solano, &c., with general warranty of title; and it also stipulates that the plaintiff shall lay off upon any one mile square of said tract of land, a town to be called Bacaville, and 1055 of the lots of the said town should be conveyed by the plaintiff to the defendant, said lots to be average lots of the town; which deed

was acknowledged before B. D. Hyman, Notary Public, and left for record, 22d August, 1850, as certified by Lawhal Bynum, County Recorder.

H. St. Clair was then called on the part of the plaintiff, and testified that he was the publisher of the California Gazette, and that defendant had admitted in his presence, that he had authorized the publication in the Gazette of the card mentioned in the plaintiff's complaint.  L. B. Misner testified to the same effect, and said further that defendant did not then complain of the boundaries, but said, " Where is my $3000 ?"

James M. Estell testified, that he knew all the land in question, and would have given $6 per acre for it cash, in the month of December, A. D. 1850; that he offered $6 per acre for it, and plaintiff refused to take it, but proposed taking $10 per acre for it, which plaintiff refused to give; that he was still in treaty for it, when he saw a card in the California Gazette, signed Manuel Baca, asserting that plaintiff, McDaniel, had no title to the land, which broke off the negotiation.

And he said, on cross-examination, that two or three gentlemen had proposed purchasing a portion of the land in dispute, and he advised them not to do so, as they would buy a lawsuit; did not think the land would be sold for more than five dollars per acre now with a clear title to it; his bid was made under the impression that the title was perfect; thought there was but a slight difference between the value of the land now and when he bid for the same : there is, however, a slight falling off, say 20 per cent; the land is valuable for hay ; the best portion of it might have been rented for three or four dollars per acre, but this would be a losing business at the present price of hay; thought one-half the land was good oats land.

Muldron, on the part of the plaintiff, testified that he knew the land, and had offered 1400 acres of land in the State of Missouri for a like quantity of this land, and valued his Missouri land at $6 per acre; that the treaty for this exchange of land was broken off by the appearance of this card, as witnesses did not wish to buy a lawsuit; and being recalled, said that he knew others who would have purchased land of plaintiff, as they said, but for defendant's card; thinks the land worth $6, but under a forced sale would not bring more than $1.50 per acre.

L. B. Mizner, called for plaintiff: said that defendant called on him to see plaintiff; that he was defendant's attorney,—which he qualified by saying that he was acting not so much as the attorney as he was the friend and interpreter of the parties; that no fee was ever charged by him for his services, nor did the defendant ever pay him anything for his services. Defendant's counsel here objected to this witness giving evidence of what defendant had communicated to him as his attorney; which objection was overruled by the Court; and the counsel for the defendant excepted to the decision.

Witness then said, that defendant knew the quantity of the land; he understood and executed the deed of August 21, 1850; that the witness translated it correctly, and defendant was anxious for the trade. Witness acted as interpreter between the parties.

Here the plaintiff gave in evidence a deed from plaintiff to defendant, dated October 1st, 1850, conveying to defendant 1050 lots in Bacaville; and also a deed from Fillippe Pina to plaintiff and B. Mizner, conveying to them all of said Pina's interest in the land mentioned in the deed of August 21, 1850; and also a deed from defendant to Pina, conveying to Pina defendant's interest in one league of land, as a consideration for Pina's interest mentioned in his conveyance to plaintiff and L. B. Mizner.

William Groboon, on the part of defendant, being sworn, was asked if L. B. Mizner stated to the defendant in May last, at Benicia, in the presence of this witness, M. De Penche, and others, that there was no particular quantity of land that the defendant had agreed to convey to the plaintiff by the deed of August 21, 1850, but only enough to build a town on. This evidence was objected to on the part of the plaintiff, and the Court ruled that the evidence could not be received to impeach Mizner; to which decision the defendant excepted.

The defendant then introduced a deed for one undivided half of the land in question from plaintiff to the witness, L. B. Mizner, dated 22d April, 1850.

The testimony being closed, the plaintiff asked the Court to give the following instructions to the jury, which the Court gave as requested, and defendant excepted.

1st. That in their deliberations they are to confine themselves

to the issue joined between the parties, and that any evidence that does not support the issue must be disregarded by them.

2d. That a party having an interest in land has a right to sue in his own name a party who slanders his title thereto.

3d. That where a party injuriously slanders the title of a person who owns land, malice is presumed in law.

4th. That fraud cannot be presumed but must be established by proof, and may be established by circumstances, but not of a light character; the circumstances must be of the most conclusive nature.

The defendant asked the Court to instruct the jury as follows:—

1st. That if the jury believe from the evidence that the receipt for $3000 in the deed, was obtained by fraud, they are authorized to find for the defendant.

2d. That in the admissions of the defendant brought out by the plaintiff, as made by defendant, all that defendant then said must be considered by the jury, and they are authorized to give all the declarations such weight as they may deem them entitled to.

3d. That if the jury believe from the evidence that the deed of 21st August, 1850, was to be executed by both parties, that the defendant was not bound by the same until the plaintiff had joined in the same.

4th. That if the jury believe from the evidence that the plaintiff really sustained no damage, but might have sold to others, but did himself refuse to sell, on the ground that the purchaser would be buying a law suit, the jury are authorized to believe that no special damages were sustained.

These instructions the Court refused to give but did instruct the jury, that the defence would only be good, if the defendant could have sold to others for a reasonable price who had notice of the defendant's card—to which refusal and to the charge so given the defendant excepted.

5th. That as the plaintiff avers that he owned a part of the land, without specifying what part or portion, the jury cannot assess damages, unless the plaintiff has shown what portion or part he did own at the time the notice was published.

6th. The defendant would not become bound by any accept-

ance of the deed from plaintiff for the lots, if they believe he did not understand his legal rights or the object of accepting the same.

7th. That as plaintiff has alleged in his complaint, that he is the owner in fee simple of the land referred to in said notice by plaintiff charged as a libel or slander, he must establish the fact that the plaintiff was owner in fee simple.

8th. That the plaintiff, in an action of slander of title, must prove malice in the defendant, which the Court charged with the qualification, following:

"Before the plaintiff can recover beyond actual damages, and the jury will consider from the whole testimony, whether malice existed, and if from the whole testimony the defendant had not good cause for the slander of title, malice will be presumed;" to which the defendant excepted.

9th. That if the words charged as a slander of title, are published by defendant claiming title in himself to the lands, this action cannot be sustained.

10th. That the plaintiff, in an action for slander of title, cannot recover more damages than he has actually sustained.

The jury being instructed as above, brought in a verdict for the plaintiff against the defendant for the sum of $16,750, on which judgment was entered.

Defendant appealed.

*Jones, Tompkins,* and *Stroud,* for appellant.

*H. Lee* and *Smith,* for respondent.

*Jones, Tompkins,* and *Stroud* argued,

1st. That the verdict was against law. The publication upon which the action is brought, embodies in itself a claim of title to the land by defendant. If the title of plaintiff was obtained by fraud or false pretences, then the title is in fact still in defendant; when a deed is void on the ground of fraud, it is void *ab initio.* Sands *v.* Codwise, 4 Johns. Rep. 536; Harden *v.* Randall, 15 Maine Rep. 332; Bailey *v.* Dean, 5 Barbour's N. Y. Rep. 300; Starkie on Slander, Ch. 12, p. 201, 2, 3, 4, 5; Smith *v.* Spooner, 3 Taunton's Rep. 248; and the law presumes in the first instance some ground of claim. Starkie on Slander, Ch. 12, p. 201. To sustain this action, it must appear that there was want of probable cause for claim, and the *onus probandi* is not

with the plaintiff. Bailey v. Dean, 5 Barbour, 301. So, the plaintiff was bound to show express malice in defendant before he could recover. 2 Greenleaf's Evid. § 428. The *intention* of defendant is the *gist* of the action, and must be shown to be malicious to entitle plaintiff to recover. 2 Greenleaf's Evid. § 271; Ib. § 488.

The evidence was not sufficient to justify the verdict; General Estelle and Colonel Muldron offered $6 per acre for the land; the plaintiff demanded $10. There is no evidence that the parties would ever have agreed; they always stood at $6 to $10. It is denied that the alleged slander prevented a sale; the difference of views as to the value of the land, between the respective parties, accounts for it. But there is no evidence to sustain this heavy verdict. If the result of the slander, it was *special;* for the law will not imply, but such damage must be proved. 2 Greenleaf's Evid. secs. 254. 253. 266, and note, 4.

The damage found by the jury was excessive; the offer of Estelle, in 1850, would make the price of the land then $34,600 —suppose it depreciated 20 per cent., that would amount to but $6,932, nearly $10,000 less than the verdict. Muldron's opinion that the land was worth $6 at the time of trial, is merely hypothetical: if that was not taken as the basis of estimate by the jury, there is not the first item of evidence to sustain the verdict. It therefore cannot be sustained. 12 Johns. Rep. 234, 5, 6; 3 Mass. Rep. 546; 1 Pick. Rep. 1 and 9.

There was error in the Court overruling the defendant's objection to the testimony of L. B. Mizner, as to what defendant said to him as his attorney or interpreter. 1 Greenleaf's Evid. secs. 239, 240. And in excluding the evidence of William Graham. The credit of a witness may be impeached by proof that he has made statements out of Court, contrary to his testimony on the trial. Ib. sec. 462.

The Court erred in instructing the jury, "that where a person injuriously slanders the title of a person who owns land, malice is presumed in law." 5 Johns. Rep. 188; 13 Johns. Rep. 124. 275; 5 Cowen's Rep. 503. 513 and 714; 1 Binn. Rep. 542; 5 Binn. Rep. 218; 2 Harr. J. 363; 5 Harr. J. 125; 2 Bibb. 473; 4 Mass. Rep. 262; 2 Greenleaf's Evid. secs. 418, 419. 428.

If what defendant did was in pursuance of a claim of title,

even though he was mistaken, and the plaintiff thereby injured, he is not responsible to the plaintiff. In such cases malice is disproved. Bailey *v.* Dean, 5 Barb's Rep. 301.

The Court erred in instructing the jury, "that the circumstances to establish fraud must be of the most conclusive nature." Neither courts of law nor equity insist on positive and express proofs of fraud, but each deduces them from circumstances affording strong presumptions. 1 Story's Equity, sec. 190; 1 Greenleaf's Evid. secs. 53. 33. 15. If the circumstances be such as to afford a fair and reasonable presumption of the facts to be tried, they are to be left to the jury, to whom alone it belongs to determine their force and effect, as regards the fact in issue. 2 Cowen's Rep. 404, third edition.

The Court erred in refusing to instruct the jury, that "if they believed the receipt for $3000 in the deed was obtained by fraud, they would be authorised to find for the defendant." ——— *v.* Whitaker, Haynes, 71; Harr. Ch. Rep. 172. Parol evidence is admissible to show that the consideration expressed in a deed, was not in fact received by the grantor. 20 Johns. Rep. 338; 6 Cowen's Rep. 90; 2 Hill's N. Y. Rep. 554. The refusal so to instruct, was equivalent to a denial that such was the law.

The Court erred in refusing to instruct the jury, that "all that defendant said in his admissions, brought out by the plaintiff, must be considered by the jury, who had authority to give all the declarations such weight as they should deem them entitled to." Admissions should be received with great caution. 1 Greenleaf's Evid. sect. 201. And in refusing to instruct the jury, "that as plaintiff avers he owned a part of the land, without specifying what part, they could not assess damages, unless plaintiff has shown what part or portion he did own at the time the notice was published." Starkie on Slander, ch. 26, p. 384–5; 1 Chitty's Plead. 329; 3 Cowen's Rep. 329. And in refusing to charge the jury "that as the plaintiff had alleged that he was the owner of the land in fee simple, he was bound to establish the fact of the ownership." This averment of his ownership was material to the plaintiff's case, and could not have been stricken from his complaint without destroying his right of action. 1 Greenleaf's Evid. sect. 51; Practice Act of 1851, sect. 66; 1 Chitty's Plead. 277; Practice Act of 1851, sects. 40 and 45;

1 Greenleaf's Evid. sects. 51. 56. 60.  And in instructing the jury "that if from the whole evidence the defendant had not good cause for the slander of title, malice could be presumed."  The law presumes innocence of intention, and this presumption must be affirmatively rebutted.  Starkie on Slander, ch. 12, p. 201, 202, 203, 204, 205; 1 Greenleaf's Evid. sect. 35; 2 Greenleaf's Evid. sect. 428; 5 Barbour's Rep. 301; 2 Denio's Rep. 617; 2 Selwyn's Nisi Prius, 1066; 2 Greenleaf's Evid. sect. 454; 1 Wend. Rep. 345; 2 Wend. Rep. 424; Constitution of California, art. 6, sect. 17.  And in refusing to instruct the jury "that if the words charged as slander of title, were published by defendant claiming title to the land.  This action cannot be sustained." Bailey *v.* Dean, 5 Barbour's Rep. 301.  And in refusing to instruct the jury "that the plaintiff in an action for slander of title cannot recover more damages than he has actually sustained." Greenleaf's Evid. sect. 253; 2 Greenleaf's Evid. sect. 266. The action was for an injury to the *property* of the plaintiff. And by the 64th section of the Practice Act of 1851, a plaintiff cannot unite in the same action claims for injuries to character, to person, and to property, nor can he unite any two of these complaints.  If exemplary damages can be allowed in any case, it is only in an action involving either injuries to the person, or injuries to the character; and if damages were allowed for injury to the *feelings* of plaintiff, or to his reputation, they were therefore improperly allowed.  And the plaintiff under the statute has the right still to his action for injury done to his feelings or person, and also for those done to his reputation or character. The jury should have been instructed that they should allow no damages beyond those actually sustained.  2 Greenleaf's Evid. sect. 418.

*W. Smith,* for respondent.  It is important to have a clear conception of the issue made up by the parties and tried below, as this will enable us to dispose of many of the points that have been raised : and it is the object of pleading to form a naked issue, affirmative on one side and a denial on the other.  3 Blackstone, 251, 282; 1 Greenleaf Ev., sect. 51; Practice Act, 153 ; and if a material averment, well pleaded, is passed over by the adverse party without denial, or demurrer in law, it is conclu-

sively admitted. 1 Greenleaf Evid. 27. What, then, had plaintiff to show to maintain his action? All that is requisite is

First, Title to the land in question.

Second, The slander of the title.

Thirdly, Malice.

Fourthly, Damages, so far as they may be special; and such general damages as the jury may think proper to assess.

It is averred in the complaint, that the plaintiff had purchased of the defendant an English league of land, for which he received his deed of August 21, 1850, for the consideration therein expressed. This averment is not denied by the answer, and is therefore admitted by the authority above referred to. But the deed is not impeached, and is sustained by an interchange of deeds between Baca and Pena, which were intended to perfect the title of plaintiff.

Secondly, the slander of title is fully known, and is not denied, and therefore admitted.

Thirdly, with *malice*. Malice, in law, is a mere inference of law, which results simply from a wilful transgression of the law. It is where one wilfully does wrong without any legal excuse; and it may be implied from the wilful doing of an injurious act, without lawful excuse. 2 Starkie, 674-5; 635, and note, &c.; 1 Greenleaf, sec. 34 and 18.

Fourthly, as to damages. See Sedgwick, 38 to 46, as to the measure of damages; and as to the rule of damages, see Sedgwick, 493. 551. Sundry instructions were moved by the plaintiff in support of his rights and duties, and were given to the jury. First, " that where a person injuriously slanders the title of another who owns land, malice is presumed in law." This instruction assumes that the party owns the land, the title of which is slandered; and that defendant knows it; and that knowing it, he injuriously slandered the title. As a general proposition, this cannot be questioned : but the defendant insists that a man has a right to assert his own title; and that in denouncing the title of the plaintiff, he was exercising a privilege : but plaintiff insists that in the case at bar, he exceeded his privilege, and has no right to its protection. 3 Stephen's Nisi Prius, 2560; 14 Com. Law Rep. 560. Second, " That the circumstances to establish fraud must be of the most conclusive nature." See 3 Star-

kie, 934, 1 Starkie, 543. As to the instructions moved by defendant, the second and third points are not for considera- tion, because not presented in a motion to the Court for a new trial. As to the fourth, the objection to Mizner's testimony—— there is nothing in this, as it does not appear that any thing was divulged in his character of attorney or interpreter, if in fact he was such.

Fifth. The question involved in this exception does not pre- sent any thing to show for what purpose the question was pro- pounded to the witness Graham, as it does not appear that it was relevant. 14 Peters, 448. A similar question was pro- pounded to the witness Mizner. If the purpose was to contra- dict him, by asking this question of Graham, then defendant was properly overruled ; because the cross-examination of a wit- ness must be confined to his examination in chief. 1 Greenleaf, 445—7—8 ; 1 Stark. 189 ; 14 Peters, 448.

The 8th and 9th exceptions come within the same principle, that instructions can only be asked upon points, necessarily arising in the cause. If therefore an abstract instruction be asked, and' the decision thereon be erroneous, it is not error. See 2 Bacon, 113 and references; 9 Cowen, 674; 1 Porter, 139; Walker, 379; 3 Wendell, 418.

The tenth and eleventh exceptions are within the principles formerly referred to ; defendants answer, having conclusively admitted the plaintiff's title as laid in the complaint. The twelfth is embraced in the remarks upon the third. The ruling of the Court in the thirteenth is plainly correct; and as to the fourteenth, wherever malice is shown to exist, damages beyond the actual injury sustained, may be found by the jury. Sedgwick, 38. And in this case no real substantial defence was made. It was a case of deliberate malice. The title was made by defendant under circumstances of caution, and confirmed two months there- after, and he stands in the attitude of one acting without good faith, and without probable cause, and is therefore clearly to be put into the hands of the jury to be dealt with according to their discretion. 3 Stephen's Nisi Prius, 639 ; 3 Taunton, 240. And a man is presumed to contemplate the probable and natural con- sequences of his act. 1 Greenleaf, sec. 18. Nor will the Court reverse a judgment for error that does not plainly go to the sub-

22

stance of the action.  1 Starkie, 532, and note B; 2 Moor, 153; 1 Taunton, 12; 6 Bingham, 561; Practice Act, sec. 186; 1 Barbour, 155.

The opinion of the Court was delivered by

ANDERSON, Justice.—This is an action brought in the District Court for the County of Solano, by William McDaniel, the present respondent, against Manuel Baca, the appellant, for slander of title to land.

The cause was tried on the 31st of October, 1851, by a jury, in the Court below.  They rendered a verdict for the plaintiff of sixteen thousand seven hundred and fifty dollars.

The Court ordered judgment to be entered therefor, and for the further sums of three hundred and sixty-five dollars, and five hundred and ninety-six dollars and fifty cents costs, making in all the sum of seventeen thousand seven hundred and eleven dollars and fifty cents.

From this judgment, the defendant appealed.

The facts are briefly, as appears by the record, that McDaniel purchased a tract of land from Baca, and obtained a conveyance from him.

The deed was dated the 21st day of August, 1850, and is stated in the record to have been for a square English league of land.  The defendant for answer states that said deed was obtained from him by covin, deceit and fraud.

The slander of title consisted in the publication in a newspaper, under the signature of Manuel Baca, notifying all persons not to purchase any land from William McDaniel, which he claims to have purchased from him, but was under a title obtained by false pretences; and that he should institute suit against said McDaniel to annul the title.  The deed set forth that $3000 were received by Baca as the consideration.  One of the plaintiff's witnesses, who acted as interpreter and attorney for Baca, states that he read the deed to Baca.  The deed was made on the 21st of August, and it appears that the same witness received a conveyance from McDaniel on the 22d of August, for an undivided half of the land.  In relation to the same witness, William Graham was called on the part of the defendant, to prove that he had made to him and others a different statement from that which he did

upon oath, in regard to the admission of Baca as to the quantity of land which he had agreed to convey. This testimony was objected to by the counsel for the plaintiff, and the Court ruled that it could not be received. This was an error, and of a material and capital character; especially, considering the peculiar history of the whole case, and the connection it had with the testimony of William Palmer, who swore that the plaintiff told him shortly before August, 1850, that he had bought of the defendant one square mile of land, and offered him land if he would help him to get the title papers of the defendant, which he refused to do.

The Court at the instance of the counsel for the plaintiff instructed the jury, "that where a person injuriously slanders the title of another, malice is presumed." Also, "that fraud cannot be presumed, but must be established by proof, and may be established by circumstances, but not of a light character; the circumstances must be of a most conclusive nature." These instructions were erroneous, and were well calculated to mislead the jury. They are contrary to law; and the record is contradictory and involved. Where fraud is charged, express proof is not required, it may be inferred from strong presumptive circumstances. Greenleaf's Evid. sect. 428; 1 Story's Eq. Jur. sect. 190. The caution published by Baca has no marks of malice accompanying it. On the contrary, it was just such a notice as every freeman and freeholder in the land would be justified in making, if the circumstances warranted a strong presumption that any fraud had been attempted upon him to get possession of his estate.

The publication was made, founded upon his own title, and a fixed belief that he had been defrauded. The proof is by the plaintiff's chief witness, and who it seems was the active agent in obtaining the conveyance; that he did not understand the English language, and he was certainly an easy subject over whom to obtain a mastery by skilful strategy.

The Court below refused to instruct the jury, that if the receipt as specified in the deed for $3000, was obtained by fraud, they were authorized to find for defendant. In this the Court erred. There is not a case to be found in the history of jurisprudence which would sustain that ruling. It covered a question

which entered materially into the trial.   It belongs to a class of principles about which there has never been but one opinion, but one set of decisions.   The citation of authorities would be superfluous.

The damages in this case were unexampled, and unjustifiable; and although Courts will not often disturb a verdict for that cause, yet they sometimes do, and particularly if it verges upon the line of an outrage.   However, the Court does not feel called upon to notice it in this instance.   But by this, we do not mean to intimate that we should refuse for that cause, under any circumstances, to disturb that verdict, if it were necessary to the end of justice.   It is sufficient to say, that the facts in this case are of a novel and extraordinary character; and it is desirable for the sake of justice, that they should receive a full, fair, and impartial investigation.   It is time in California, to begin in this respect a new era, and this Court is never better employed than when, by its decisions, it is pointing public attention, the public confidence, and the public judgment to that end.

It is the duty of this Court to decide that the rulings of the Court below, as adverted to, are erroneous, and that the verdict is contrary to law and evidence.

The decision of the Court is, that the judgment of the Court below be reversed, and the cause be remanded for a new trial, and that William McDaniel, the respondent in the case, pay the costs.