## MARY A. HOPKINS *vs.* CHRISTOPHER R. DROWNE.

PROVIDENCE—OCTOBER 22, 1898.

PRESENT : Matteson, C. J., Tillinghast and Rogers, JJ.

(1) *Slander of Title. False Statements. Malice.*

In an action based upon slander of title the plaintiff is required to prove, *first,* the uttering and publishing of the slanderous words ; *second,* their falsity ; *third,* malice ; *fourth,* special damage thereby.

The false statements must be made with full knowledge of their falsity, and for the purpose of injuring the plaintiff.

The evidence need not show malice in its worst sense, but malice consisting of an intent to deceive or injure.

Malice, as a purpose existent in the mind, is not ordinarily provable as an independent fact ; it is best shown by the character of the language or conduct which are the manifestations of personal hostility or ill-will toward another.

Where it appears that the language used was knowingly false, and uttered with an intention to injure, it is clearly competent for the jury to find that it was malicious.

Slander of title, in this regard, stands upon the same footing with other actions for false representations.

The mere fact, however, that a person asserts a claim to the property which is unfounded, does not warrant a presumption of malice ; if there appears no reasonable or probable cause for the claim of title, still the jury are not bound to find malice, but may do so if they are satisfied it exists.

(2) *Exemplary Damages.*

In actions of this kind the jury may, in their discretion, award punitive or exemplary damages.

TRESPASS ON THE CASE for slander of title. Heard on defendant's petition for a new trial.

TILLINGHAST, J.    This is trespass on the case for slander of title.    At the trial of the case in the Common Pleas Division the plaintiff recovered a verdict in the sum of $5,000, and the case is now before us on the defendant's petition for a new trial on the grounds that the verdict is against the evidence and that the damages are excessive.

The declaration charges, in the first count thereof, that defendant falsely and maliciously spoke and uttered the following false, scandalous, and defamatory words of and concerning the business of the plaintiff, to one George W. Rose, and to divers other persons who were seeking to purchase the property in question, viz. :    "She" (meaning the plaintiff) "is not a yearly tenant of the Central Hotel" (meaning the hotel aforesaid), "but is only a monthly tenant, and there is no need of dealing with Mrs. Hopkins" (meaning dealing for the purchase of the hotel), "but only with me," &c.    The declaration contains four other counts, each of which alleges the speaking of the same words to various other persons who are named therein.

The facts in the case may be summarized as follows :    The defendant, with others, is the owner of the premises situated at number 9 Canal street, in the city of Providence, and known as the Central Hotel.    For a long period of time prior to his death (about thirty-two years) Benjamin S. Hopkins, plaintiff's husband, in company with different persons from time to time, had been the lessee and proprietor of said hotel. On the 12th day of June, 1894, the plaintiff came into possession of the premises from Hopkins & Chase, and immediately hired the same from the defendant for the period of one year, as she testifies, at an annual rental of $2,800, payable in monthly instalments of $233.33, and was in possession at the time of the trial of this case to the jury.    After the death of her husband, which occurred in July, 18 , the plaintiff desired to dispose of the lease of the hotel and its furnishments, together with the good-will of the place, and, upon making this fact known to the public, she had a number of responsible applicants who offered to take her title if she was a yearly tenant, and pay her therefor the sum of

$3,700. Upon inquiring of the defendant, however, by the would-be purchasers, as to the plaintiff's tenancy, he told them that she was only a monthly tenant, also that she had broken her lease, and that all dealings with her for the pos- session of the hotel would be fruitless and that they must deal only with him. Thereupon the intended purchasers re- fused to proceed further, and the proposed sale could not be effected. The defendant's testimony as to the terms of the letting is vacillating and unsatisfactory. He first says it was a letting by the month; second, that she paid the rent monthly but hired the premises by the year; and, third, that in his judgment and belief she was hiring by the month. It appears, also, that the defendant first gave the plaintiff a notice to quit based upon the theory that she was in under a monthly tenancy, and then, after consulting his attorney, that he gave her a second notice to quit based upon the theory that it was a yearly tenancy.

(1) In order for the plaintiff to recover in this action she must prove, first, the uttering and publishing of the slanderous words aforesaid; second, that they were false; third, that they were malicious; and, fourth, that she sustained special damage thereby.

As to the fact that the defendant uttered and published said words, there is abundance of testimony on the part of the plaintiff, and practically no denial thereof on the part of defendant. Were they false? There is positive evidence that they were, and the circumstances connected with the long term of years during which the premises had been occu- pied by plaintiff's husband and herself corroborate said evi- dence. The probabilities also may well have strengthened the plaintiff's testimony in the minds of the jury; for it might well be argued that it is improbable that a prudent hotel keeper would place herself at the mercy of her landlord by enabling the latter to disposses her on fifteen days' notice. It is true there is some testimony to the effect that it was a monthly tenancy. But in view of the inconsistencies con- nected therewith, above referred to, it certainly cannot be said that the jury were not warranted in finding that the

preponderance of the evidence upon this issue was with the plaintiff.

Were said statements malicious? That malice is the gist of the action no one will deny. Not malice in its worst sense, but such malice as consists of an intent to deceive or injure; and in order to constitute it there must be a false statement, it must be made with full knowledge of its falsity and for the purpose of injuring the plaintiff. How is this to be proved? Counsel for defendant strenuously argues that it must be proved as a substantive fact, by which he means, as we understand his argument, that there must be proof of express malice outside of and in addition to such as may be legitimately inferred from the language and conduct of the defendant. We do not so read the cases cited by him in support of this argument, nor do we understand such to be the requirement of law. It is true that malice must be proved as a substantive fact, for without it no case is made out. But that it is necessary to prove it as an independent fact we do not agree. Malice is a purpose existing only in the mind, and is not ordinarily susceptible of proof as an independent fact. It is that feeling of personal hostility or ill-will towards another which only manifests itself in language or conduct, and hence is best shown by the character of the language or conduct. In other words, it naturally and legitimately springs out of and is to be inferred from such language or conduct as naturally tends to deceive, injure, and damage another, and for which there is no legal excuse. Even in criminal cases it is not necessary to prove express malice, in the sense aforesaid, but it may properly be, and almost always is, inferred from the language used or the character of the act committed. And we apprehend the decisive question concerning the point now under consideration to be whether, in a case like the one before us, there is evidence to warrant the jury in inferring malice. And where it is made to appear that the language used was knowingly false and uttered with an intent to injure, it is clearly competent for the jury to find that it was malicious. *Clark* v. *Molyneux*, 3 L. R. (Q. B. Div.) 237 (247). Slander of Title in this

regard stands upon the same footing with other actions for false representations. *Malachy* v. *Soper*, Big. Lead. Cas. Torts, 42, and cases cited in note on p. 54; Big. Torts, Student Series, 35. See also *Andrew* v. *Deshler*, 45 N. J. Law, 167; 13 Am. & Eng. Ency. L. 368.

In *Darry* v. *The People*, 10 N. Y. 120 (136), Selden, J., in speaking of malice, says: "There is no difference in the nature or degree of the malice intended, whether it be called express or implied, when these terms are used in their most appropriate sense. If properly applied, they refer only to the evidence by which the existence of malice is established. Both alike, the one no less than the other, mean *actual* malice, malice shown by the proof to have really existed." See also Towns. Slander & Libel, 3 ed. § 87 and cases cited.

In Odg. Libel & Slander, *136, it is said that the law relating to false statements concerning one's title to property, or the quality thereof, belongs properly to the law of deceit, rather than to the law of defamation. The author also says that "knowledge of the falsity of the statement will undoubtedly establish malice, as in the ordinary action of slander." See also *ib.* *145.

In *McDaniel* v. *Baca*, 2 Cal. 326, cited by defendant's counsel, which was an action for slander of title, the court held that the instruction of the court below to the jury " that fraud cannot be presumed, but must be established by proof, and may be established by circumstances but not of a light character; the circumstances must be of a most conclusive nature," was erroneous and well calculated to mislead the jury. Anderson, J., said : " They are contrary to law, and the record is contradictory and involved. Where fraud is charged, express proof is not required ; it may be inferred from strong presumptive circumstances."

In *Cardon* v. *McConnell*, 120 N. C. 461, cited by defendant's counsel, the court say : " It is essential to the action that the words be maliciously uttered and with intent to injure, and the burden of proving such malice, *express or implied*, rests upon the plaintiff. If he can show that the utterances were not made in good faith to assert a real claim

of title, or facts and circumstances that warrant such an inference, then malice may be fairly *implied*."

In *Harrison* v. *Howe*, 109 Mich. 476, cited by defendant's counsel, the court ˙held that the question whether there was malice in fact was for the jury, under the circumstances of the case.    To the same effect is *Bacon* v. *Railroad Co.*, 66 Mich. 166 (173); Add. Torts (Wood), 6 ed. vol. 1, 260, marginal page ; *Van Tuyl* v. *Riner*, 3 Brad. (Ill.) 556 ; *Lovell Co.* v. *Houghton*, 54 N. Y. Sup. Ct. 60.

Of course we fully agree with defendant's contention that the mere fact that a person asserts a claim to the property, which is unfounded, does not warrant a presumption of malice.    It is clearly not actionable for a man to assert his own rights at any time ; and even where the defendant fails to prove such right, still, if at the time he spoke he honestly supposed such right to exist, no action lies.    Hence, whenever a man claims a right or title in himself in possession or remainder, it is not enough for the plaintiff to prove that he has no such right ; he must also show that the defendant could not honestly have believed in the existence of the right he claimed, or at least that he had no reasonable or probable cause of believing so.    If there appear no reasonable or probable cause for the claim of title, still the jury are not bound to find malice, but they may if they are satisfied it exists. Newell Defam. 206 ; Cool. Torts, 2 ed. 260.    In the case before us it was for the jury to say whether the defendant, who was the lessor, and may therefore be presumed to know the terms of the letting, both as to the amount of rent to be paid and also as to the term for which plaintiff hired the premises, was not stating that which he knew to be false, when he told the would-be purchasers of plaintiff's interest that she was only a monthly tenant, and that therefore all dealings regarding the lease must be had with him.    In this connection it was competent for the jury to find a motive for the statements of defendant as to the ownership in question, from the fact that, according to the testimony of several witnesses, he was very anxious to get the money, or a large

part thereof, which it was proposed to pay the plaintiff, for the purpose of improving the premises.

Joseph H. McLoughlin testified as follows: "Q.—Did you tell Mr. Drowne what you offered this woman for the place? A.—Yes, sir.   Q.—What did he say?   A.—Well, he said that he did not want her to get such a bonus as that, that he would rather have the money laid out on the hotel to improve the property.   Q.—What else did he say?   A.—He said that he considered the lease broken.   Q.—And that she was what?   A.—Only a monthly tenant.   Q.—Well, give the jury the whole of the conversation that you had with Mr. Drowne.   A.—I told Mr. Drowne that I was ready to pay Mrs. Hopkins her price.   It seems that she told me that she offered the place for $3,000, but there were so many after it to buy it that she thought she ought to get $500 more. He said that I wanted to buy it before she got higher, but he said that he would fix that for me, I need not worry about that, that I would not have to pay her what she asked.   It was his proposition that she need not get such a bonus; that he wanted somebody to go in there that would not have to pay her all they could, but could lay some out on the hotel and improve the property.   On my second visit I said that she maintained that she had a lease, a yearly lease, and he said he considered the lease broken.   I asked him if it was a yearly lease, that I would go and pay Mrs. Hopkins and take possession and take my chances on the second year; he said that would never do, that he would not accept me.   Q.— Were you prepared to take it with her title?   A.—Yes, sir. Q.—And pay the $3,700?   A.—Yes, sir.   Q.—And take your own chances for the next year?   A.—Yes, sir.   Q.—At the termination of her year?   A.—Yes, sir."

George W. Rose testified to a conversation with defendant in which, amongst other things, the following was said: "He says, 'look here, what are you going to give her for that place?'   I said, '$3,700.'   'Well,' he says, 'that is quite a bonus, isn't it?'   I says, 'I don't know; I thought if it was worth $3,000 it was worth $700 more.'   I says, 'I didn't mind that, she being a widow.   I have been acquainted with

Mr. Hopkins so long, and she is acquainted with a lot of people down to Block Island and she said she would help me all she could.' He says, 'Now then wouldn't you rather get that place for $2,000 than for $3,700.' I says, 'There is no way I can get it. Why, she told me that it was the least she could give it up for; three or four stood ready to take it if I did not.' 'Well,' he says, 'it is going to cost you something to fix it up.' I says, 'Yes, sir; I thought it would cost me about $600 to get it running as I wanted it fixed up.' He says, ' Now then, if you say $2,000 you can take the place and fix up the cellar door—that wants fixing up—and the cellar wants a new floor, and you can fix the place up.' I says, 'She won't let me have it any less as far as that goes.' Well, then I commenced to see what he was up to. He said she was only a monthly tenant and he could have her out any time he wished and I could have that much more money to fix up the place with. I said I would not want to do anything like that, it would hurt me; that she had got a good many friends and I used to work for her husband when I was a youngster there, and I wouldn't do anything like that; and another thing, my people belonged to the church and I didn't think I would do anything to hurt Mrs. Hopkins. He says, 'I will tell you, I am going to let Reed have it.' I says, ' Now you being a church member that don't look right, Mr. Drowne, to let Mr. Reed have it.' He says, 'I understand you gave up the run; you dropped out.' 'I never told you anything of the kind, did I,' says I. He says, 'No, but Mr. Reed told me.' I says, 'I didn't tell you.' ' Well,' he says, 'I am going to let Reed have it,' just like that. Q.—Did he say anything about dealing with himself, Mr. Drowne, and not with Mrs. Hopkins. A.—Yes, sir; He told me it would be of no use for me to get it of her for he would put me right out within a month's time. He said 'If you would lay your money out there you could improve the property, and if I paid *her* so much I could not have it, and then he said if I got it of him I could have a ten years lease."

Upon a careful consideration of all the testimony in the case, we are unable to say that the jury were not warranted

in finding the defendant's statement as to plaintiff's title in the premises was knowingly false and malicious.

We do not think the damages are so clearly excessive as to warrant the interference of the court. Several responsible witnesses testified that they were ready and willing to give $3,700 for plaintiff's interest in the premises including the furniture, fixtures, and good will, and the evidence shows that, so far as the furniture and fixtures were concerned, they were of little value over and above the mortgage thereon; so that it is evident that the offers were practically made for the plaintiff's unexpired term as lessee of the hotel, together with the good will of the place. There is also evidence that after the statements made by the defendant, as aforesaid, and after it became known that a license for the sale of intoxicating liquor at said place had been applied for by Mr. Reed, who had obtained the refusal of the premises from the defendant, plaintiff's business, which was that of keeping a temperance hotel, as her husband had always done, rapidly fell off, her customers getting the impression that she had given up the place.

(2) In addition to the actual damages sustained by the plaintiff, it was discretionary with the jury to also award punitive or exemplary damages (*Kenyon* v. *Cameron*, 17 R. I. 122; *Vogel* v. *McAuliffe*, 18 R. I. 791), which they evidently did in this case.

Petition for new trial denied, and case remitted to the Common Pleas Division with direction to enter judgment on the verdict.

*John M. Brennan and Dennis J. Holland*, for plaintiff.

*Stephen A. Cooke, Louis L. Angell, Stephen O. Edwards, Walter F. Angell, Seeber Edwards, and Albert Gerald*, for defendant.