**Supreme Court**

No. 2015-93-Appeal.
(KC 10-368)

Kimberly Lomastro          :

v.          :

Margaret Iacovelli, in her capacity as          :
interim superintendent for the          :
Town of Johnston et al.          :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Kimberly Lomastro             :

v.               :

Margaret Iacovelli, in her capacity as   :
interim superintendent for the         :
Town of Johnston et al.            :

Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**O P I N I O N**

**Justice Indeglia, for the Court.**   The plaintiff, Kimberly Lomastro (Lomastro or plaintiff), appeals from an order of summary judgment entered against her and in favor of Margaret Iacovelli, in her capacity as interim superintendent for the Town of Johnston, and David Cournoyer, the director of facilities and transportation for Johnston public schools (collectively defendants).   Lomastro, a school bus driver, contends that the defendants intentionally interfered with her contract with her employer, Durham School Services (Durham), when the Town of Johnston School Department (the school department) sent a letter to Durham stating that it was exercising its contractual right to withdraw its approval for Lomastro to drive school bus routes within the town.   On November 4, 2015, this case came before the Supreme Court pursuant to an order directing the parties to appear and show cause why the issues raised should not be summarily decided.   After hearing the arguments of counsel and reviewing the memoranda submitted on behalf of the parties, we are satisfied that cause has not been shown. Accordingly, we shall decide the appeal at this time without further briefing or argument.   For the reasons set forth herein, we affirm the judgment of the Superior Court.

# I

## Facts and Travel

This is the second time that these parties have come before us. While we present a brief overview of the facts pertinent to this appeal, we refer the reader who seeks additional detail regarding the facts and procedural history to our opinion in Lomastro v. Iacovelli, 56 A.3d 92 (R.I. 2012) (Lomastro I).

In January of 2008, Lomastro was employed as a bus driver by Durham, a private bus company. At the time, Durham was under contract with the school department to provide transportation for Johnston public school students. A section of that contract, entitled "Driver Withdrawal," provided: "It is understood that the Superintendent of Schools or designee reserves the right to withdraw, with or without cause, at any time, their approval of any driver. The contractor will immediately upon receipt thereof replace the driver."

On January 18, 2008, Lomastro was driving a bus that was full of elementary-school children, without a bus monitor on board, when she broadcast over the radio that someone had shot at her bus and that the children were panicked. After an investigation was conducted, an employee disciplinary report was completed by a supervisor at Durham. In this report, the supervisor determined that Lomastro should be given a warning, but noted that this action was "[p]ending communication with [the] school [department]." On January 23, 2008, Morris Bochner (Bochner), the director of transportation for Johnston schools, wrote a letter to Durham on behalf of the school department stating that it found Lomastro's conduct "unacceptable." The letter stated that, although Lomastro reported that the school bus was shot at, "[a]s the facts unfolded, the Providence Police responded along with Durham and School Department

personnel, [and] it was determined that this was not the case."[1] The letter went on to state that "[b]roadcasting a hoax is * * * a violation of Federal Communications Commission – Section 73.1217 of 47 CFR 73.1217." In the letter, the school department also took issue with Lomastro's "refusal to maintain radio contact, not utilizing her cellular telephone, placing students in harm[']s way as a result of unwarranted panic, allowing a student to obtain names of who was on the school bus, and never attempting to maintain control or reassuring the students that they were safe * * *." Citing the aforementioned "Driver Withdrawal" provision from its contract with Durham, the school department "formal[ly] request[ed] to not have [Lomastro] transport students of the Johnston Public Schools upon receipt of [the] letter." Two days later, on January 25, 2008, a "Work Separation Form" was completed by Lomastro's supervisor at Durham stating that Lomastro was being involuntarily terminated and listed as a reason: "Driver withdrawal at customer's request."

In her amended complaint,[2] Lomastro alleged that the school department's letter "constituted an intentional interference with Contract as to [her] then employment with her then current employer * * * as well as intentional interference of prospective economic relations * * * with her employer[.]" In due course, defendants moved for summary judgment. In response, Lomastro argued that a genuine issue of material fact existed as to whether she was an at-will

---

[1] The record does not indicate why the school bus was in Providence at the time of the incident.

[2] In her original complaint, Lomastro alleged that defendants wrongfully requested that she be terminated from her employment at Durham. After some discovery had been completed, defendants moved for summary judgment. The hearing justice granted summary judgment in favor of the town, reasoning that there was no employer-employee relationship between Lomastro and the Town of Johnston and, thus, no claim for wrongful termination could lie against the town. At that point, Lomastro made an oral motion to amend her complaint to include a claim of tortious interference, which the trial justice denied. This Court determined that the hearing justice abused his discretion in denying her motion to amend her complaint in Lomastro v. Iacovelli, 56 A.3d 92, 96 (R.I. 2012). On remand, Lomastro's motion to amend was granted, and it is the added claim of tortious interference that is now the subject of this appeal.

employee and whether the letter sent by the school department was based on truthful information.

The hearing justice determined that the school department was a customer of Durham and, as a customer, exercised a right that it had reserved in its contract with Durham to "indicate that [it] didn't want a particular driver assigned to [the school department's] route." He further determined that Lomastro was not an employee of the school department, but an employee of Durham. Thus, he concluded that her claims against the school department must fail, noting that "her gripe is with [Durham]."[3] Accordingly, he granted summary judgment in favor of defendants. Lomastro timely appealed to this Court.

## II

### Standard of Review

This Court reviews a hearing justice's grant of summary judgment in a de novo manner, applying the same standards and rules as did the motion justice. Pichardo v. Stevens, 55 A.3d 762, 765 (R.I. 2012). In conducting our review, we remain mindful that "[s]ummary judgment is a drastic remedy, and a motion for summary judgment should be dealt with cautiously." DeMaio v. Ciccone, 59 A.3d 125, 129 (R.I. 2013) (quoting Estate of Giuliano v. Giuliano, 949 A.2d 386, 390 (R.I. 2008)).

However, it is well settled that "[s]ummary judgment is appropriate when, viewing the facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party, the court determines that there are no issues of material fact in dispute, and the moving party is entitled to judgment as a matter of law." Pichardo, 55 A.3d at 765 (quoting Delta Airlines, Inc. v. Neary, 785 A.2d 1123, 1126 (R.I. 2001)). In making a summary judgment determination, the

---

[3] Prior to filing the instant action, Lomastro, through her union attorney, settled a claim against Durham.

- 4 -

hearing justice "must refrain from weighing the evidence or passing upon issues of credibility." DeMaio, 59 A.3d at 130 (quoting Doe v. Gelineau, 732 A.2d 43, 48 (R.I. 1999)). Accordingly, we have recognized that the "purpose of the summary judgment procedure is issue finding, not issue determination." Id. (quoting Estate of Giuliano, 949 A.2d at 391).

### III

### Discussion

On appeal, Lomastro first contends that summary judgment was improper on her wrongful termination claim because a genuine issue of material fact existed as to whether she was an at-will employee. Specifically, she asserts that the normal "custom and usage" period for school bus drivers is for an academic year and that defendants presented no evidence demonstrating that she was an at-will employee. However, the issue of whether Lomastro was an at-will employee is not material. Lomastro was employed by Durham which, in turn, contracted with the school department for transportation of the school students. Importantly, Lomastro had no employment contract with the school department. Without an employment relationship with the town upon which to base a wrongful termination claim, her claim must fail. See Hyatt v. Village House Convalescent Home, Inc., 880 A.2d 821, 825 (R.I. 2005).

Lomastro's second contention on appeal is that summary judgment was inappropriate with regard to her claims for intentional interference with contractual relations and intentional interference with prospective economic relations. Specifically, she asserts that a genuine issue of material fact existed as to whether Lomastro's broadcast was truthful and not a "hoax" as the school department's letter suggested.

The elements required to establish a claim for intentional interference with prospective economic relations "are identical to those required [for] a claim based on intentional interference

with contractual relations, except for the requirement in the latter that an actual contract exist[s]." Avilla v. Newport Grand Jai Alai LLC, 935 A.2d 91, 98 (R.I. 2007) (quoting Mesolella v. City of Providence, 508 A.2d 661, 670 (R.I. 1986)). To establish a prima facie claim for intentional interference with contractual relations, the aggrieved party must demonstrate "(1) the existence of a contract; (2) the alleged wrongdoer's knowledge of the contract; (3) his [or her] intentional interference; and (4) damages resulting therefrom." Belliveau Building Corp. v. O'Coin, 763 A.2d 622, 627 (R.I. 2000) (quoting Smith Development Corp. v. Bilow Enterprises, Inc., 112 R.I. 203, 211, 308 A.2d 477, 482 (1973)). As to the requirement that the interference must be intentional, we have not required that actual malice be shown; rather, "legal malice—an intent to do harm without justification—will suffice." Id. (quoting Jolicoeur Furniture Co. v. Baldelli, 653 A.2d 740, 753 (R.I. 1995)). "Therefore, to establish a prima facie case of intentional interference with contract, aggrieved parties must allege and prove not only that the putative tortfeasor intended to do harm to the contract but that they did so without the benefit of any legally recognized privilege or other justification." Id. If the plaintiff establishes these prima facie elements, the burden then shifts to the defendant to prove that the contractual interference was indeed justified. Id.

Here, the sole issue is whether a genuine issue of material fact exists as to justification for the school department's actions. In expounding upon the doctrine of intentional interference with contractual relations, we have recognized that one way in which a defendant's actions may be justified is if that defendant interferes by making a good-faith assertion of a legally protected interest. See Belliveau Building Corp., 763 A.2d at 629. Specifically, we have declared that:

> "One who, by asserting in good faith a legally protected interest of his own or threatening in good faith to protect the interest by appropriate means, intentionally causes a third person not to perform an existing contract or enter into a prospective contractual relation with another does not interfere improperly with

the other's relation if the actor believes that his interest may otherwise be impaired or destroyed by the performance of the contract or transaction." Id. (quoting Restatement (Second) Torts § 773 at 52 (1977)).

The touchstone of our inquiry is the defendant's good faith at the time that the defendant exercises its legally protected interest. See id. at 630 (noting that there was no evidence to show that, when the defendants asserted their legally protected interest, "they did not 'honestly suppose[] such right to exist'") (quoting Hopkins v. Drowne, 21 R.I. 20, 25, 41 A. 567, 568 (1898)). Indeed, this Court has repeatedly recognized that, even where a defendant's assertion of a right ultimately turns out to be unfounded, "if at the time he [or she] spoke, he [or she] honestly supposed such right to exist, no action lies." Id. (quoting Hopkins, 21 R.I. at 25, 41 A. at 568-69). Accordingly, so long as a defendant is acting in good faith at the time it asserts its interest, based on all information available to it at that time, the assertion of such interest is protected—even if it is later determined that the basis for the defendant's action was invalid. See id.

We first recognize that there is no doubt that the school department had a legally protected interest in its contract with Durham. Indeed, such contract provided that the school department "reserve[d the school department's] right to withdraw, with or without cause, at any time, their approval of any driver." [4]

Our inquiry next turns to whether the school department was justified because it invoked this provision in good faith. In the case at hand, there is nothing in the record to suggest that the school department was not acting in good faith at the time that it sent the letter to Durham exercising its right to remove Lomastro from routes within the town. In invoking this provision

_____

[4] Notably, in asking that Durham "not have [Lomastro] transport students of the Johnston Public Schools * * *," the town did not ask that Lomastro be terminated from her employment at Durham. Durham was still free—if it chose—to assign Lomastro to another route in another city or town.

in its letter to Durham, the school department provided rational reasons for requesting that Lomastro not serve as a school bus driver for the town. Namely, the school department stated that Lomastro broadcast without basis that the school bus had been shot at and that such broadcast caused "panic and fear" to the student-passengers on the school bus. The school department also found various aspects of the way in which Lomastro handled the situation—such as her refusal to maintain radio contact or utilize her cellular phone after the broadcast—to be unacceptable.

Nevertheless, Lomastro contends that the school department's letter to Durham asking that she be replaced creates a genuine issue of material fact as to justification because the letter stated that the broadcast was a hoax and, thus, it must be determined whether Lomastro had a basis to broadcast that the bus had been shot at. In support, Lomastro asserts that she was not criminally charged as a result of the incident and that the surveillance video from the bus at the time of the incident shows that she had a reasonable basis to believe she was being shot at.

Lomastro's argument misses the mark: Whether it can be determined in hindsight that Lomastro had a basis to broadcast that the bus had been shot at is of no consequence. In assessing whether a defendant acted in good faith, what is relevant is the information available to that defendant at the time of the allegedly improper action. See Belliveau Building Corp., 763 A.2d at 630. At the time the school department sent the letter to Durham, all of the information available to it suggested that Lomastro had no basis for her broadcast. Specifically, the school department was aware that Lomastro had broadcast over the radio that her school bus had been shot at, but that the Providence Police, together with Durham and school department personnel, determined that this was not the case. Notably, Lomastro has not presented any evidence that, at the time that the letter was sent, the school department knew or had reason to know that she had

not been criminally charged as a result of the incident. Nor has Lomastro submitted any other evidence to show that, prior to sending the letter, defendants had any reason to know that Lomastro may have had a basis for her broadcast. While Bochner had viewed the surveillance video from the school bus prior to sending the letter, he testified that it was unclear from the video whether the students began declaring that the school bus was being shot at before or after hearing Lomastro's broadcast. Thus, the school department's decision to assert its contractual right in light of viewing this inconclusive video does not provide any evidence that the school department acted in bad faith in asking that Lomastro be removed from routes within the town. As recognized above, if the school department made a good-faith assertion of a legally protected interest based on all the information available to it at the time, then it cannot be held to have committed an intentional interference with the contract—even if, in hindsight, it is determined that Lomastro's broadcast was entirely truthful. See Belliveau Building Corp, 763 A.2d at 630. Thus, whether Lomastro's broadcast was in fact truthful or a "hoax" is not a material fact in the summary judgment determination.

It is Lomastro's failure to provide evidence that the school department invoked its contractual right without justification that prevents her from establishing a prima facie case and, thus, causes her claim to fail. Accordingly, we hold that the hearing justice did not err in granting summary judgment in favor of the defendants.

**IV**

**Conclusion**

For the reasons set forth above, we affirm the grant of summary judgment in favor of the defendants. The materials associated with this case may be remanded to the Superior Court.

- 9 -

**RHODE ISLAND SUPREME COURT CLERK'S OFFICE**



*Clerk's Office Order/Opinion Cover Sheet*

**TITLE OF CASE:**   Kimberly Lomastro v. Margaret Iacovelli, in her capacity as interim superintendent for the Town of Johnston et al.

**CASE NOS:**   No. 2015-93-Appeal.
(KC 10-368)

**COURT:**   Supreme Court

**DATE OPINION FILED:**   December 1, 2015

**JUSTICES:**   Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**WRITTEN BY:**   Associate Justice Gilbert V. Indeglia

**SOURCE OF APPEAL:**   Kent County Superior Court

**JUDGE FROM LOWER COURT**:

Associate Justice Bennett R. Gallo

**ATTORNEYS ON APPEAL:**

For Plaintiff:   Thomas M. Petronio, Esq.

For Defendants:  Kathleen M. Daniels, Esq.