**Supreme Court**

No. 2017-426-Appeal.
(PC 16-4079)

John Rocchio Corporation          :

v.          :

Pare Engineering Corporation.          :

NOTICE:    This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

John Rocchio Corporation :

v. :

Pare Engineering Corporation. :

Present: Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**O P I N I O N**

**Justice Indeglia, for the Court.** The plaintiff, John Rocchio Corporation (Rocchio), appeals from a final judgment of the Superior Court granting summary judgment in favor of the defendant, Pare Engineering Corporation (Pare). This matter came before the Court on December 6, 2018, pursuant to an order directing the parties to appear and show cause why the issues raised should not be summarily decided. After considering the arguments set forth in the parties' memoranda and at oral argument, we are convinced that cause has not been shown and further argument or briefing is not required to decide this matter. Accordingly, we affirm the judgment of the Superior Court.[1]

---

[1] We affirm the judgment of the Superior Court, albeit for different reasons from those set forth in the hearing justice's decision. In so doing, we follow "our precedent of affirming the orders and judgments of a trial court when there are other valid reasons to support the order or judgment appealed from." *McGovern v. Bank of America, N.A.*, 91 A.3d 853, 861 (R.I. 2014) (alteration and deletion omitted) (quoting *Levine v. Bess Eaton Donut Flour Co., Inc.*, 705 A.2d 980, 984 (R.I. 1998)).

**Facts and Travel**

On June 5, 2015, the Warwick Sewer Authority (the WSA) entered into an agreement with Pare for consulting and engineering services relating to a sewer infrastructure expansion project that the WSA planned to complete. That agreement required Pare to provide certain pre-bid services, which included preparing requests for proposal (RFP) that would serve as the basis for the state-law-mandated bidding process for potential general contractors.[2] Pare completed this task, and the WSA ultimately received bids from five companies: D'Ambra Construction Corp., Inc., ET&L Corp., Hart Engineering Corp. (Hart), DiGregorio, Inc. (DiGregorio), and Rocchio. The bids were opened and read aloud during a public ceremony at Warwick City Hall on April 22, 2016. Rocchio was the low bidder at $2,318,285, which was approximately $147,000 less than the next-lowest bid, which was submitted by DiGregorio.

On April 27, 2016, Pare prepared and delivered a memorandum to Janine Burke-Wells, the executive director of the WSA, containing Pare's review and recommendations regarding the bidding process. In that memorandum, Pare provided a review of the submissions of the two lowest bidders, Rocchio and DiGregorio, which included a notation regarding the failure of Rocchio and Hart to include certain required EPA forms in their bids.[3] Pare concluded its recommendation by stating:

> "Based upon the review of the bids it appears that [Rocchio] should be disqualified, at the discretion of the WSA, for failing to include the required EPA forms 6100-3 and 6100-4 as required by

---

[2] At that time, the agreement between the WSA and Pare did not contain any provisions regarding bid-phase services such as the recommendation letter at issue in this case, as discussed *infra*. There is some dispute as to whether that provision was included later by verbal addendum to the agreement in January 2016.

[3] It appears from the record that the EPA forms were necessary for the bid because the project was receiving EPA financial assistance.

page 2 of Attachment F: Good Faith Efforts, in Section 00830 of the Project Specifications. Based on interviews with the Contractors and their references, and Pare's understanding of the Contractor's capabilities from previous experience, Pare is not aware of any reasons why the Contract should not be awarded to either [Rocchio] or [DiGregorio]. Pare is aware [Rocchio] has previously completed work for the WSA, which could be considered by the WSA when evaluating the Contractor's qualifications."

At a WSA board meeting on April 28, 2016, pursuant to Burke-Wells's request, the board tabled the bid selection until the May 2016 meeting. However, prior to that April 28, 2016 board meeting, Burke-Wells had met with the president of Rocchio, "as a professional courtesy[.]" In a letter dated May 2, 2016, the president thanked Burke-Wells for meeting with him and provided the two required EPA forms that had been previously omitted from Rocchio's bid.

The next WSA board meeting was held on May 19, 2016. The minutes of that meeting reflect that the board discussed and reviewed the reports of Pare and Burke-Wells. Moreover, the minutes also indicate that Burke-Wells "asked that the Board reject [Rocchio's] low bid and award a contract to DiGregorio, Inc. * * *." In her memorandum to the board dated May 19, 2016, Burke-Wells explained the reasoning for her recommendation. She noted that Rocchio and Hart originally failed to submit the required EPA forms; however, she went on to explain that Rocchio eventually provided the WSA with the EPA forms but that there were "several irregularities" in that submission. Burke-Wells also referenced prior projects that Rocchio had performed for the WSA, which involved conflicts regarding change orders and increased project costs above Rocchio's original bid on those projects. In her deposition, Burke-Wells testified that her recommendation to the board was based on "[m]ainly performance and [her] concern * * * with some attention to detail, but that was not the ultimate reason. The ultimate reason was the research [she] had been doing with past experience on projects with the [WSA]."

- 3 -

Also at the board meeting on May 19, one of the board members stated that he understood Burke-Wells's recommendation as being based on the WSA's experience with prior work performed by Rocchio. According to the meeting minutes, Burke-Wells "concurred" and further added that "the EPA forms are important as well, and (failure to submit) disqualifies the bidder." Another board member moved to award the contract to DiGregorio and explained that his recommendation was "based entirely on the submission of qualifying documents" and that, if the board was "going to have qualifications for bid submittal, WSA should abide by those qualifications." The board then unanimously approved the motion to award the contract to DiGregorio.

On August 29, 2016, Rocchio filed the instant action in Providence County Superior Court, asserting claims against Pare for interference with prospective contractual relations (Count I); negligence (Count II); and breach of contractual obligations due to Rocchio as a third-party beneficiary of the contract between the WSA and Pare (Count III).[4] Pare ultimately moved for summary judgment on all counts, arguing that the project award to DiGregorio was based on the recommendation of Burke-Wells and the vote of the WSA board. Pare maintained that it did not act in a way as to intentionally interfere with Rocchio's prospective contractual relations, pointing out that it had no interest whatsoever in which company was ultimately awarded the bid. Pare further averred that Rocchio could not produce evidence demonstrating that Pare's recommendation to Burke-Wells was the proximate cause of the rejection of Rocchio's bid by the WSA, and it further argued that the economic loss doctrine barred Rocchio's claim. Finally, Pare posited that Rocchio was an incidental beneficiary of Pare's contract with the WSA, rather

---

[4] We take a moment to note that, at the hearing on Pare's motion for summary judgment, Rocchio acknowledged that it had "made a business determination" and elected to file its claims solely against Pare and did not include the WSA as a party to this lawsuit.

than an intended beneficiary, and, as such, was not entitled to bring a claim for breach of contract against Pare.

In opposition, Rocchio argued that the economic loss doctrine would not bar a negligence claim concerning professional services. Moreover, Rocchio claimed that Pare was negligent in failing to specify the required EPA forms when it prepared the RFP and that Pare was further negligent in recommending that the WSA board reject Rocchio's bid. Rocchio additionally contended that it was an intended beneficiary of the agreement between Pare and the WSA and that holding otherwise "would require the erroneous conclusion that no third parties can be intended beneficiaries of such a contract."

In its reply, Pare asserted that Rocchio's negligence claim fails because Rocchio did not retain an expert to support its assertion that Pare's preparation of the RFP fell below the standard of care applicable to engineers.

After a hearing on October 30, 2017, the hearing justice granted Pare's motion for summary judgment. The hearing justice agreed with Pare that Rocchio had failed to submit sufficient evidence on the element of causation and granted Pare's motion for summary judgment on all counts. Specifically, the hearing justice stated that he was "satisfied that an element that must be established is lacking from the papers that are before the [c]ourt. There is nothing that demonstrates causation as has here been argued by [Pare]." An order and final judgment entered in favor of Pare on all counts of Rocchio's complaint. Rocchio timely appealed to this Court on the grounds that causation is a question for the trier of fact and that there are several remaining questions of fact to be decided, precluding summary judgment.

## II

## Standard of Review

We review a grant of summary judgment *de novo*. *Jessup & Conroy, P.C. v. Seguin*, 46 A.3d 835, 838 (R.I. 2012). This Court views "the evidence in a light most favorable to the nonmoving party, and we will affirm the judgment if we conclude that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law." *Berman v. Sitrin*, 991 A.2d 1038, 1043 (R.I. 2010) (quoting *Ouch v. Khea*, 963 A.2d 630, 632 (R.I. 2009)). "We have long recognized that summary judgment is a drastic remedy, and should be dealt with cautiously." *Behroozi v. Kirshenbaum*, 128 A.3d 869, 872 (R.I. 2016) (alteration and deletion omitted) (quoting *Laplante v. Rhode Island Hospital*, 110 A.3d 261, 264 (R.I. 2015)). However, we have also concluded "that 'we will not hesitate to affirm a grant of summary judgment if the nonmoving party fails to make a showing sufficient to establish the existence of an element *essential* to that party's case.'" *Laplante*, 110 A.3d at 264 (emphasis in original) (deletion omitted) (quoting *Beauregard v. Gouin*, 66 A.3d 489, 493 (R.I. 2013)).

## III

## Discussion

## A

## Negligence

As set out above, the hearing justice determined that Rocchio had failed to submit sufficient evidence of causation; and, on that ground, he summarily dismissed all three counts of Rocchio's complaint. In light of the hearing justice's ruling, we begin our analysis with Count II of Rocchio's complaint, which alleges that Pare was negligent in performing its duties under the

contract between Pare and the WSA.[5]  "To maintain a cause of action for negligence, the plaintiff must establish four elements: (1) a legally cognizable duty owed by defendant to plaintiff; (2) breach of that duty; (3) that the conduct proximately caused the injury; and (4) actual loss or damage." *Medeiros v. Sitrin*, 984 A.2d 620, 625 (R.I. 2009).  While the hearing justice granted Pare's motion for summary judgment based on the lack of evidence regarding the causation element of Rocchio's negligence claim, we instead focus our attention on the duty element.

"It is well settled that 'issues of negligence are ordinarily not susceptible of summary adjudication, but should be resolved by trial in the ordinary manner.'" *Holley v. Argonaut Holdings, Inc.*, 968 A.2d 271, 274 (R.I. 2009) (quoting *Gliottone v. Ethier*, 870 A.2d 1022, 1028 (R.I. 2005)).  "However, in the absence of a duty, 'the trier of fact has nothing to consider and a motion for summary judgment must be granted.'" *Id.* (quoting *Banks v. Bowen's Landing Corp.*, 522 A.2d 1222, 1225 (R.I. 1987)).  "Whether a defendant is under a legal duty in a given case is a question of law." *Id.*  "Only when a party properly overcomes the duty hurdle in a negligence action is he or she entitled to a factual determination on each of the remaining elements: breach, causation, and damages." *Id.* (quoting *Ouch*, 963 A.2d at 633).

---

[5] Although we hold herein that Rocchio's negligence claim fails, we note that, in its filings to this Court, Pare contends that the economic loss doctrine acts as a bar to Rocchio's recovery on its claim of negligence for purely economic injuries. We disagree with this contention. "The economic loss doctrine provides that 'a plaintiff is precluded from recovering purely economic losses in a negligence cause of action.'" *Franklin Grove Corp. v. Drexel*, 936 A.2d 1272, 1275 (R.I. 2007) (quoting *Boston Investment Property # 1 State v. E.W. Burman, Inc.*, 658 A.2d 515, 517 (R.I. 1995)).  "When parties have contracted to protect against potential economic liability, as is the case in the construction industry, contract principles override tort principles and, thus, purely economic damages are not recoverable." *Id.* (deletion omitted) (quoting *E.W. Burman, Inc.*, 658 A.2d at 517).  As we have stated, "it is appropriate for sophisticated commercial entities to utilize contract law to protect themselves from economic damages." *Id.* (quoting *E.W. Burman, Inc.*, 658 A.2d at 517).  However, because Rocchio never entered into a contract with either the WSA or Pare, in this context a commercial entity could bring a claim, sounding in negligence, for pure economic loss.  Therefore, we hold that the economic loss doctrine does not apply in this case to preclude Rocchio's negligence claim, and we therefore proceed to review that claim.

Here, Rocchio alleges in its complaint that "Pare in the performance of its contract with the WSA, was required to exercise the ability, skill and care customarily exercised by engineers in similar circumstances." In support of its position, Rocchio relies on our opinion in *Forte Brothers, Inc. v. National Amusements, Inc.*, 525 A.2d 1301 (R.I. 1987). In *Forte*, a general contractor had contracted with a project owner to perform excavation and grading work for a construction project. *Forte*, 525 A.2d at 1302. The project owner also retained a site engineer for the project to determine the amount and nature of the excavation that the general contractor was hired to perform and to report that information back to the project owner. *Id.* There was no contract between the site engineer and the general contractor. *Id.* Subsequently, the general contractor brought an action against the project owner and the site engineer, alleging that the site engineer had negligently performed its duties, resulting in the project owner refusing to pay the general contractor and thereby causing injury to the general contractor. *Id.*

The site engineer in *Forte* moved for summary judgment, arguing that it was acting as an agent of the project owner and, therefore, it could not be personally liable to the general contractor. *Forte*, 525 A.2d at 1302. The trial justice granted the site engineer's motion for summary judgment, and the general contractor appealed. *Id.* The novel issue before the Court in *Forte* was "whether a third-party general contractor who may foreseeably be injured or suffer an economic loss proximately caused by the negligent performance of a contractual duty by a[] * * * site engineer has a cause of action in negligence against the * * * site engineer notwithstanding an absence of privity." *Id.* The Court answered in the affirmative and concluded that the general contractor had "directly and reasonably relied" on the site engineer's performance and that the site engineer had a duty to the general contractor to "render its services professionally." *Id.* at 1303. In so holding, the Court "join[ed] 'an emerging majority of

jurisdictions [which] have taken the position that a contractor can maintain a negligence action against an architect without direct privity of contract between the parties.'" *Id.* (quoting *Detweiler Bros., Inc. v. John Graham & Co.*, 412 F. Supp. 416, 419 (E.D. Wash. 1976)).

We opine, however, that the case now before the Court is distinguishable from *Forte*. We similarly distinguished *Forte* in our opinion in *Boston Investment Property # 1 State v. E.W. Burman, Inc.*, 658 A.2d 515 (R.I. 1995). There, we explained that in *Forte*, the alleged negligence by the site engineer occurred after all three parties—the project owner, the site engineer, and the general contractor—were already in place, and that the three parties "were collaborators on the same project[.]" *E.W. Burman, Inc.*, 658 A.2d at 516. Moreover, we emphasized that each of the three parties "were aware of each other's presence, and each had an interrelated contract with the property owner." *Id.* at 516-17.

Here, only two parties were in place—the WSA and Pare—and Rocchio was one of five bidders that responded to the RFP. In situations involving public requests for bids, it may be impossible to determine how many and which general contractors will submit bids for the project. *See E.W. Burman, Inc.*, 658 A.2d at 517 (holding that the plaintiff-purchaser of property "was neither known to nor identifiable to [the] defendant contractor" and that "[t]heir individual relationships with the original owner were wholly independent of each other * * * [so t]here was no foreseeable harm to a subsequent owner"). Here, a determination that Pare owed a duty to Rocchio under the circumstances present in this case would effectively be a determination that all engineers contracted by project owners owe a duty to all general contractors that could possibly submit a bid on any given request for proposal. We believe that would be an absurd result; and, accordingly, it is our view that there is a distinct difference between situations like

*Forte* and situations like the one before us, where a third party is unidentifiable and unforeseeable at the time of the alleged negligence.

We therefore hold that Pare did not owe a duty to Rocchio in light of the facts of this case. Consequently, we affirm the hearing justice's decision granting Pare's motion for summary judgment on Rocchio's negligence claim; but we do so on the ground that there was an absence of a duty, rather than on the ground that there was an absence of causation.

**B**

**Third-Party Beneficiary**

Although the hearing justice did not address the parties' argument regarding Rocchio's third-party beneficiary claim—Count III of the complaint—we will nevertheless examine this claim in light of our duty to conduct a *de novo* review. In its papers to this Court, Rocchio contends that there exists a question of fact as to whether Rocchio was an intended or incidental beneficiary of the contract between Pare and the WSA. Specifically, Rocchio argues that Pare breached its obligations to Rocchio as a third-party beneficiary when Pare formulated the RFP and failed to specify that EPA forms were required for the bid. We disagree.

This Court has held that "[i]t is well settled that 'when one party for valuable consideration, engages another by contract to do some act for the benefit of a third party, the latter who would enjoy the benefits, may maintain an action for breach of contract.'" *Glassie v. Doucette*, 157 A.3d 1092, 1097 (R.I. 2017) (alteration omitted) (quoting *Davis v. New England Pest Control Co.*, 576 A.2d 1240, 1242 (R.I. 1990)). "In order to prevail on a contract claim as a third-party beneficiary, the claimant must prove that he or she is an intended beneficiary of the contract." *Id.* "An intended beneficiary of a contract 'stands in the shoes' of the promisee." *Id.* (quoting *Cathay Cathay, Inc. v. Vindalu, LLC*, 962 A.2d 740, 746 (R.I. 2009)).

Rhode Island courts follow the Restatement (Second) *Contracts* § 302 (1981) for guidance in distinguishing between intended and incidental beneficiaries of a contract. *See Glassie*, 157 A.3d at 1097; *Cathay Cathay, Inc.*, 962 A.2d at 745. This section reads, in part:

> "(1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either
> "(a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or
> "(b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance." Restatement (Second) *Contracts* § 302.

In this case, the contract at issue—between Pare and the WSA—is in the record. As we have stated, "[t]he language employed by the parties to a contract is the best expression of their contractual intent, and when that language is 'clear and unambiguous, words contained therein will be given their usual and ordinary meaning and the parties will be bound by such meaning.'" *Cathay Cathay, Inc.*, 962 A.2d at 746 (quoting *Singer v. Singer*, 692 A.2d 691, 692 (R.I. 1997) (mem.)). "Whether a contract's terms are ambiguous is a question of law." *Id.* "A contract may be deemed ambiguous only if 'it is reasonably and clearly susceptible of more than one interpretation.'" *Id.* (quoting *Rotelli v. Catanzaro*, 686 A.2d 91, 94 (R.I. 1996)). "In determining whether a contract is clear and unambiguous, the document must be viewed in its entirety and its language be given its plain, ordinary and usual meaning." *Id.* (alteration omitted) (quoting *Rubery v. Downing Corp.*, 760 A.2d 945, 947 (R.I. 2000)). "Additionally, we have consistently held that '[i]n situations in which the language of a contractual agreement is plain and unambiguous, its meaning should be determined without reference to extrinsic facts or aids.'" *Id.* (quoting *Clark-Fitzpatrick, Inc./Franki Foundation Co. v. Gill*, 652 A.2d 440, 443 (R.I. 1994)).

We perceive no ambiguity in the aforementioned contract. The contract does not suggest any intent to benefit a third party, nor does it mention a third party to be benefited by the contract. Notably, the only signatories to the contract are Burke-Wells and the senior vice president of Pare. Additionally, the services that Pare provided pursuant to the contract, both before and during the bidding process, did not evince a clear intent to "directly and unequivocally" benefit anyone other than the WSA. *See Hexagon Holdings, Inc. v. Carlisle Syntec Incorporated*, No. 2017-175-Appeal, 2019 WL 237937, at \*2 (R.I. Jan. 17, 2019). Therefore, we hold that Rocchio was not an intended beneficiary of the contract between Pare and the WSA, and that summary judgment was appropriate as to Rocchio's third-party beneficiary claim.

## C

### Intentional Interference with Prospective Contractual Relations

"To establish a prima facie claim for intentional interference with contractual relations, the aggrieved party must demonstrate '(1) the existence of a contract; (2) the alleged wrongdoer's knowledge of the contract; (3) his [or her] intentional interference; and (4) damages resulting therefrom.'" *Lomastro v. Iacovelli*, 126 A.3d 470, 474 (R.I. 2015) (italics deleted) (quoting *Belliveau Building Corp. v. O'Coin*, 763 A.2d 622, 627 (R.I. 2000)). Although we require that the interference be intentional, "we have not required that actual malice be shown; rather, 'legal malice—an intent to do harm without justification—will suffice.'" *Id.* (quoting *Belliveau Building Corp.*, 763 A.2d at 627). "Therefore, to establish a prima facie case of intentional interference with contract, aggrieved parties must allege and prove not only that the putative tortfeasor intended to do harm to the contract but that they did so without the benefit of any legally recognized privilege or other justification." *Id.* (quoting *Belliveau Building Corp.*,

763 A.2d at 627). After a plaintiff has successfully established "these prima facie elements, the burden then shifts to the defendant to prove that the contractual interference was indeed justified." *Id.* (italics deleted).

The record before this Court lacks any indicia of Pare's intent to harm Rocchio, and Rocchio did not submit any evidence indicating that Pare was not acting in good faith. This Court has regularly held that "[t]he party opposing 'summary judgment has a duty to establish that a genuine issue of material fact exists and may not rest solely upon allegations and denials in the pleadings.'" *CACH, LLC v. Potter*, 154 A.3d 939, 943 (R.I. 2017) (quoting *Urena v. Theta Products, Inc.*, 899 A.2d 449, 452 (R.I. 2006)). Accordingly, we affirm the hearing justice's grant of summary judgment on this count.

## IV

## Conclusion

For the reasons stated herein, we affirm the judgment of the Superior Court. We remand the papers to that tribunal.

## SUPREME COURT – CLERK'S OFFICE

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | John Rocchio Corporation v. Pare Engineering Corporation. |
| **Case Number** | No. 2017-426-Appeal. (PC 16-4079) |
| **Date Opinion Filed** | February 13, 2019 |
| **Justices** | Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia JJ. |
| **Written By** | Associate Justice Gilbert V. Indeglia |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer From Lower Court** | Associate Justice Michael A. Silverstein |
| **Attorney(s) on Appeal** | For Plaintiff:<br><br>Gregory J.Acciardo, Esq.<br>Mal A. Salvadore, Esq. |
| | For Defendant:<br><br>Brian C. Newberry, Esq.<br>Adam Benevides, Esq. |